Argued February 20, reversed May 15, 1923.

# LANDBERG *v.* STATE INDUSTRIAL ACCIDENT COMMISSION.

(215 Pac. 594.)

**Master and Servant—Verdict in Compensation Case Conclusive if Supported by Some Competent Evidence.**

1. The provision of Workmen's Compensation Act (Section 6637, Or. L.), that the court shall be bound by the jury's finding of fact neither enlarges nor restricts the effect given by other provisions of the Code to a verdict on a material issue defined in Section 96, Or. L., and an entire want of evidence to sustain the finding can be taken advantage of on appeal, if saved by exception; but if there is some competent evidence, no matter how contradictory or unsatisfactory, the finding is conclusive, and it is only when a reasonable mind can draw but one conclusion from the evidence that the court can say, as a matter of law, that there is no testimony to sustain the finding.

**Master and Servant—"Workman" Within Compensation Act Distinguished from "Independent Contractor."**

2. The term "workman" in the Workmen's Compensation Act means, as the act states, one who engages to furnish services subject to the control of an employer, and the relation necessary to con-

stitute one an employer and another a workman under the act is the relation of master and servant originating in a contract for personal services, subject to complete control of the details of the work and the mode of its performance, a workman's status being different from that of an independent contractor, one who generally exercises an independent employment, contracting to do a piece of work according to his own methods and without being subject to the control of his employer, except as to the result of the work.

**Master and Servant—One Contracting to Deliver Crushed Rock Held an Independent Contractor, and not a "Workman," Within Compensation Act.**

3. Plaintiff and his co-contractors contracted with a construction company to furnish and deliver a specified amount of crushed rock at a specified price per cubic yard in quantities and at times specified in a written contract which obligated the company to accept the material, as delivery was made, up to the time the contract was completely performed. The company was required to furnish the quarry, the rock-crushing plant and tools, and plaintiff and his co-contractors were to furnish and pay for all labor and expenses. It appeared that a former employee of the company whose wages were taken out of money due under the contract was brought to the rock-crushing plant to take charge of its operation, and that the work was partially done by employees whose wages were paid the company but deducted from the earnings under the contract. *Held* that plaintiff, who was injured in the work, was an independent contractor, and not a "workman," *within* Workmen's Compensation Act, defining the term as one engaging to furnish services subject to the control of an employer.

**Master and Servant—Review of Question in Compensation Case Reserved by Motion for Nonsuit and Directed Verdict.**

4. Where the State Industrial Accident Commission moved in the trial court for a nonsuit and a directed verdict, on the ground that compensation claimant was an independent contractor, and not a workman, it reserved the right to a decision of the question on appeal.

From Multnomah: GEORGE ROSSMAN, Judge.

Department 1.                                    REVERSED.

For appellant there was a brief over the names of *Mr. I. H. Van Winkle,* Attorney General, and *Mr. James West,* Assistant Attorney General, with an oral argument by *Mr. West.*

---

3. Distinction between independent contractor and workman under workmen's compensation laws, see note in **Ann. Cas. 1918B,** 708.

For respondent there was a brief over the names of *Mr. B. A. Green* and *Messrs. McGuirk & Schneider,* with an oral argument by *Mr. Green.*

RAND, J.—The plaintiff, while engaged in breaking rock as a part of the process of crushing it for use in the surfacing of a state highway, sustained an injury to his hand. Claiming that at the time of the injury he was an employee of the Security Construction Company, he presented a claim for compensation for the injury to the State Industrial Accident Commission, but the claim was rejected upon the ground that at the time of the injury (1) he was not an employee of said company, and (2) because he had not filed with the commission, as required by Section 6636, Or. L., a notice in writing stating that he elected to contribute under the act.

Plaintiff appealed from the decision of the commission, and on the trial of the cause in the Circuit Court the only question submitted to the jury was: "Did Charles Landberg suffer an injury to his right hand while employed as laborer and servant of the Security Construction Company, and did this injury arise out of and in the course of his employment?" The jury answered this question in the affirmative. Plaintiff had judgment and the State Industrial Accident Commission appeals.

1. It is a provision of the Workmen's Compensation Act "that in case of any trial of fact by a jury the court shall be bound by the decision of the jury as to the question of fact submitted to it." Sec. 6637, Or. L. This provision, however, neither enlarges nor restricts the force and effect given by other provisions of the code to a verdict of a jury on an issue of fact. To sustain a verdict in any civil action

there must be some competent evidence in support of every material issue in the case. "A material allegation in a pleading is one essential to a claim or defense, and which could not be stricken from the pleading without leaving it insufficient as to such claim or defense." Sec. 96, Or. L. A denial in a pleading of a material allegation in an adversary's pleading raises a material issue which must be established by evidence, and if there is an entire want of evidence on such issue the defect is not cured by a verdict, and the defect can be taken advantage of upon appeal if the right is saved by exception. However, if there is some competent evidence in support of a material issue, no matter how contradictory the same may be or how unsatisfactory in its weight or effect the evidence may appear to the court, the decision of the jury as to the fact is conclusive upon the court. It is only in a case where there is no room for a reasonable mind to draw any but the one conclusion from the evidence, that the court rightfully can say, as a matter of law, there is not testimony sufficient to sustain the verdict.

Plaintiff's right to receive compensation from the commission was based upon the contention that at the time of the injury he was an employee of the Security Construction Company, and this was his contention in the trial of the cause in the court below, and that is his contention here. He makes no claim that as an employer he is entitled to compensation. He did not comply with the provisions of the act so as to bring himself as an employer within the provisions of the law as he might have done if he was an independent contractor. Hence, if he is entitled to recovery at all, he is entitled to recover only because, at the time of the injury, he was a workman within

the meaning of the act, and not an independent contractor, as claimed by the commission.

2. The word "workman" as employed in the act was held in *Anderson* v. *State Industrial Accident Com., ante,* p. 304 (215 Pac. 582), to mean, as the act states, " 'any person, male or female, who shall engage to furnish his or her services subject to the direction or control of an employer.' This implies a legal conception entirely different from that of an independent contractor. To be a workman within the meaning of the statute, there must be an employer, and this employer must contract for. and secure the right to direct and control the services of the workman while the workman himself must engage to furnish his services subject to the direction or control of the employer."

※ The relation that must exist to constitute one person an employer and another person a workman, under the compensation act, is the relation of master and servant, and this relation originates wholly in contract, although the contract may be either express or implied. There must be a contract of hire. The services which the servant contracts to perform are personal services, and the master must have the right to direct and control the details of the work and the manner and mode of its performance. The test of the control, which the employer has the right to exercise and to which the servant is subject, means complete control: See *Western Indemnity Co.* v. *Pillsbury,* 172 Cal. 807 (159 Pac. 721, 723). In performing the services the servant represents the will of the master and is under his complete control and direction in all of the details of the work and in the mode and manner of its performance.

"The relation of master and servant exists whenever the employer retains the right to direct the manner in which the business shall be done as well as the result to be accomplished; or in other words, not only what shall be done, but how it shall be done." *Singer Mfg. Co.* v. *Rahn,* 132 U. S. 518 (33 L. Ed. 440, 10 Sup. Ct. Rep. 175, see, also, Rose's U. S. Notes).

The status of an independent contractor is entirely different from that of a servant. Says Mr. Labatt in 1 Labatt's Master and Servant (2 ed.), p. 222:

"The accepted doctrine is that, in cases where the essential object of an agreement is the performance of work, the relation of master and servant will not be predicated, as between the party for whose benefit the work is to be done and the party who is to do the work, unless the former has retained the right to exercise control over the latter in respect to the manner in which the work is to be executed. This attribute of the relation supplies the single and universally applicable test by which the servants are distinguished from independent contractors."

Mr. Bailey in his work on Personal Injuries (2 ed.), Vol. 1, p. 102, gives three definitions of an independent contractor, the first of which we quote:

"An independent contractor is one who, generally exercising an independent employment, contracts to do a piece of work according to his own methods and without being subject to the control of his employer except as to the result of the work."

This definition received the approval of this court in *Scales* v. *First State Bank,* 88 Or. 490, 496 (172 Pac. 499).

3. We will now consider the facts in evidence in the light of the foregoing principles of law, and de-

termine whether, in our judgment, there was any competent evidence to sustain the finding made by the jury upon the question submitted.

It appears from the plaintiff's own uncontroverted testimony offered by him in support of his claim in the court below that prior to the time of his injury, the Security Construction Company had entered into a written contract with the State Highway Commission to grade and surface with crushed rock a portion of a state highway, and that that company was engaged in the performance of its contract on August 26, 1921, the day when plaintiff suffered the injury complained of. It also appears from his testimony that he and seven other persons had, prior to that time, entered into a written contract with said company by the terms of which they jointly contracted with said company to furnish and deliver to said company all of the crushed rock necessary to enable that company to complete its contract with said State Highway Commission, and that at the time of the injury plaintiff was engaged in breaking rock that was to be used by him and his co-contractors as a part of the material to be crushed and delivered to that company under the contract. The contract was offered in evidence and it shows that it was an entire contract covering the delivery of all of the crushed rock that that company should require to completely perform its contract with the State Highway Commission, and that the amount of the crushed rock was estimated at 13,200 cubic yards. The actual amount ·delivered under plaintiff's contract, his testimony discloses, was 13,700 cubic yards. The contract bound that company to accept, receive and pay for all the crushed rock that would be required to com-

plete its contract with the State Highway Commission and to pay plaintiff and his co-contractors one dollar per cubic yard. It provided that 75 per cent of the amount earned under the contract should be paid monthly and the remaining 25 per cent upon the complete performance of the contract by plaintiff, and his co-contractors.

The uncontradicted testimony of plaintiff shows that this contract has been completely performed; that 13,700 cubic yards have been delivered; that $13,700 in full payment thereof has been paid; that plaintiff commenced work under the contract on August 2, 1921, and worked under the contract until August 26, 1921, when injured, and that he earned and was paid as his proportionate part of the profits under the contract for his work between August 2d and 26th, the sum of $110. This uncontroverted testimony of the plaintiff establishes that, in the performance of the work that plaintiff was actually engaged in doing at the time of the injury, his status was that of an independent contractor and not that of an employee of the Security Construction Company nor that of a workman within the meaning of that term as employed by the Workmen's Compensation Act.

Says Mr. Bailey in the first volume of his work on Personal Injuries (2 ed.), Section 39:

"The relation of the parties is to be determined ordinarily by the contract between the parties. If the writing was not executed in good faith or it appears that, notwithstanding such contract, supervision or control of the work was assumed by the principal or original contractor, in case of such contracts, then the application of the rule is to be determined by the conduct of the parties."

In this case there was no testimony offered that in any way tended to show that the contract was not entered into or was not completely performed, by the parties to it, in entire good faith, nor was any testimony offered that in any way tended to show that any of the terms of the written contract were ever modified or changed or that the contract itself was ever abrogated or that a new or subsequent contract was ever entered into, or that anything was done by either of the parties to the contract that was not in strict conformity to its terms, nor was there any testimony offered that tended to show that the Security Construction Company ever took supervision or control of the work.

As it appears from plaintiff's own testimony that he and his co-contractors commenced the performance of their contract and continued it up to the very time when plaintiff was injured, the effect of this testimony is necessarily to exclude any inference that plaintiff was working under any different contract than the one by which he had undertaken to do the particular work he was performing at the time of the injury. If he was not working under the contract, then, according to his own testimony, he was not working under any contract, and was a mere volunteer.

There was testimony by the plaintiff that the Security Construction Company furnished the quarry from which the rock to be crushed was taken and furnished the plant by which the rock was crushed, and furnished the tools used by plaintiff and his co-contractors in doing the work necessary to be done in the fulfillment of their contract. The terms of the contract required that company to do these very things, but whether required by the contract or not,

the doing of them by the company would not alone be sufficient to change plaintiff's status from that of an independent contractor to that of an employee.

Plaintiff also testified that prior to commencing the work under the contract on August 2d, he had been employed by the Security Construction Company as a laborer and had been paid $5 per day for his labor in setting up camp and constructing a road and in working upon the installation of the rock crushing plant. He sustained no injury while so employed, and therefore this testimony is wholly immaterial. The point in issue is, What was his status at the very time of the accident, not what had been his status prior to commencing the work under contract?

Plaintiff also testified that one Hanson had been a former employee of the Security Construction Company, and that at the time the rock crushing plant was put in operation he was brought to the plant to take charge of its operation. There was nothing in the evidence to show that Hanson's operation of the plant was not acquiesced in and consented to by plaintiff and his co-contractors. It is contended that Hanson, in his operation of the plant, was an employee of the Security Construction Company, and because he was in charge of the operation of the plant, plaintiff likewise became an employee of that company.

On cross-examination, the plaintiff testified:

"Hanson's wages were taken out of the money due under this contract? A. Yes, sir. After we began to operate the crushed rock. He was there about two weeks before it was deducted. It was deducted around, I think, the 9th or 10th of August. Q. If Hanson was being employed by the other people, didn't you make any objection to their paying him wages out of your money? A. No, not after we began to crush rock, after the crusher plant was in

running condition.   Q. He started in at $7, didn't he, $7 a day?   A. That is what I understand he had on the Hot Lake crusher.   Q. Wasn't that the amount that was deducted from the amount that was to be paid to you, the gross amount, $7 a day for Hanson's wages?   A. Not deducted off of me, no.   Q. Out of the $13,700?   Wasn't Hanson's wages deducted from the first day?   A. No, sir, it was not.   He had 80 cents deducted, 8 hours, $6.40 a day.   Q. Then when he was working for you he did not get $7 a day?   A. No, he had $6.40 a day, 80 cents an hour.   Q. Did he always get the same pay?   A. No, when he worked overtime he got 80 cents an hour for that, too.   Q. Did he always get 80 cents an hour?   A. Yes, as long as I was there.   If it was changed afterwards, I don't know anything about it.''

The only fair inference that can be drawn from the above testimony is that Hanson, while in charge of the operations of the plant, was an employee of the plaintiff and his co-contractors.

''It sometimes happens that one wishes a certain work to be done for his benefit, and neither has persons in his employ who can do it nor is willing to take such persons into his general service.   He may then enter into an agreement with another.   If that other furnishes him with men to do the work and places them under his exclusive control in the performance of it, those men become *pro hac vice* the servants of him to whom they are furnished.'' *Standard Oil Co.* v. *Anderson,* 212 U. S. 215 (29 Sup. Ct. Rep. 252, 53 L. Ed. 480, see, also, Rose's U. S. Notes).

''If an employer loans his servant to another for some special service, such servant, with respect to that special service, becomes the servant of the party to whom his services have been loaned.''   1 Bailey, Personal Injuries (2 ed.), § 25, and authorities there cited.

It also appears from the plaintiff's testimony that the work at the plant and in the quarry was partially done by employees who received $5 per day and were paid by the company, but as his testimony shows these wages were deducted from the earnings under the contract to himself and his associates, that fact is wholly unimportant. In respect to this plaintiff testified:

"Q. Wasn't this five dollars a day that these men got deducted from this $13,700 that was payable to you finally? A. The Security Construction Company paid them all. Q. Wasn't this five dollars a day the total amount these men got that were working on the rock crusher, deducted from the $13,700? A. Yes. Q. So that money was taken from the money due you under this contract, to pay those men? A. The money was deducted from the amount of yardage; it was taken out at a dollar a yard. Q. Were there any other deductions made from that $13,700? A. The power from the electric machinery was deducted from it, too. Q. What do you mean by that? A. The power that was used on the job running the motor. Q. The electric bills, is that it? A. Yes. Q. The power was electric motors? A. Yes. Q. Was anything else deducted from that $13,700? A. Not that I know of. Q. How about the groceries? A. The groceries, yes, that was deducted, too."

One of the terms of plaintiff's contract was that the plaintiff and his co-contractors should furnish all labor necessary to carry out the contract; that they should operate the plant and deliver a minimum of 150 cubic yards of crushed rock every twenty-four hours, and should settle and pay for all work and labor done in quarrying and crushing the rock and all expenses connected therewith, and that they should hold the company harmless from any lien or claim therefor, and that for advances made or supplies

furnished by the company to meet said expenses of plaintiff and his co-contractors, the amount thereof should be deducted from the amount coming to them upon complete performance of the contract.

Plaintiff relies upon the case of *Arizona-Hercules Copper Co.* v. *Crenshaw*, 21 Ariz. 15 (184 Pac. 996). A different state of facts existed in that case from that disclosed by the evidence here. In that case the injured party, plaintiff's intestate, was an employee of one who had contracted with the mining company for sinking a shaft at the agreed price of $35 per foot. The contract did not fix any definite number of feet that the shaft was to be sunk, nor the time when the work was to be completed, and the court in that case said: "The fact that the contract does not fix the number of feet that the shaft was to be sunk left it optional with the appellant to close down the work at any time without breach of contract." And in support of its conclusion that plaintiff's intestate was an employee of the mine, and not an independent contractor, that court quoted with approval from *Cockran* v. *Rice*, 26 S. D. 393 (128 N. W. 583, Ann. Cas. 1913B, 570), where the contract was to do plowing at $1.25 per acre without specifying the number of acres to be plowed, as follows:

"To constitute an 'independent contractor,' the contract itself must be one the performance of which will produce a certain understood and specified result—a contract which contemplates a definite beginning, continuance, and ending. A test of the relationship between the employer and the employee is the right of the employer under the contract to control the manner and continuance of the particular service and the final result. No single fact is more conclusive as to the effect of the contract of employment, perhaps, than the unrestricted right of the

employer to end the particular service whenever he chooses, without regard to the final result of the work itself. Under the evidence in this case, there was no contract to plow any specified number of acres. Under the employment shown, Stevens could plow at a specified rate per acre and quit when he chose, or Rice could terminate such service at any time, without a breach of the contract to be performed. At most, the contract was merely to pay for such plowing as might be done by Stevens at the rate of $1.25 per acre. Such contract did not constitute Stevens an independent contractor.''

In this case the work contracted to be done by plaintiff and his co-contractors was to furnish and deliver a specified quantity of crushed rock and the duty of plaintiff and his co-contractors was to furnish the crushed rock in the quantities and at the time and in the manner specified in the contract. This duty was a continuing one and terminated only upon complete performance by them of the contract. Under this contract the Security Construction Company was obligated to accept this crushed rock as delivery was made, up to the very time the contract was completely performed. The duty of both of the contracting parties was a continuing one and terminated only upon complete performance of the contract, and neither party to the contract could terminate the contract nor refuse to perform upon their part without the consent of the other contracting party, without committing a breach of the contract and thereby becoming liable for damages to the other for such breach; while, in the contract to sink the shaft in the Arizona case, or to do the plowing in the South Dakota case, either party could terminate the contract at any time without being liable for the breach of contract.

These cases, therefore, are not parallel with the instant case.

In the Arizona case the court said:

"The decisive test is: Who has the right to direct what shall be done and when and how it shall be done? In other words, who has the right to control the work?" And it was held "that the party contracting to sink the shaft was the mere agent of the mining company for the purpose of procuring and furnishing laborers to do the work."

If the evidence produced on the trial was susceptible of two interpretations, one that the plaintiff was an independent contractor, and the other that he was an employee of the Security Construction Company, then the finding of the jury would conclusively determine that question, but as there is no room for any reasonable mind to draw any conclusion from the evidence except that plaintiff was an independent contractor at the time of the injury, it becomes our duty to hold, as a matter of law, that there was no evidence to sustain the finding of the jury.

4. As the State Industrial Accident Commission moved for a nonsuit and for a directed verdict upon this identical question, the right to a decision here was reserved. We are therefore compelled to reverse the decision of the lower court, and it is so ordered.    Reversed.

McBride, C. J., and Burnett and Harris, JJ., concur.