Argued March 4, affirmed March 18, 1924.

# GEORGE VAN KOTEN v. STATE INDUSTRIAL ACCIDENT COMMISSION.

### (223 Pac. 945.)

**Master and Servant—Stone-crushing "Hazardous Occupation" Within Compensation Act.**

1. One engaged in work on a stone-crusher in a quarry is in a "hazardous occupation," under Section 6617, Or. L., and Section 6624, as amended by Laws of 1921, page 567, Section 3.

**Contracts—Generally, Construction of Contract for the Court.**

2. Generally, the construction of a contract is for the court and not the the jury.

**Master and Servant—Jury's Finding Compensation Claimant was a "Workman" Held Conclusive.**

3. Evidence in a compensation case *held* to show that different minds might have reached different conclusions as to the capacity in

---

1. "Hazardous occupation" within meaning of Workmen's Compensation Act, see note in **Ann. Cas.** 1917D, 4, 33, 38, 39, 42.
   See 13 C. J., pp. 783, 784; W. C. A., pp. 42, 126.

which claimant, one doing a general blacksmithing business, was working while repairing a stone-crusher, making it proper to submit the question of capacity to the jury, and therefore the judgment based on jury's finding that he was a "workman," defined in Section 6619, Or. L., and not an independent contractor, could not be disturbed.

From Marion: GEORGE G. BINGHAM, Judge.

Department 1.

This is an appeal by the State Industrial Accident Commission from the judgment of the Circuit Court reversing the findings and final action of the Industrial Accident Commission disallowing the claim of George Van Koten for compensation for injuries received while working on the repair of a rock-crusher. The findings and final action of the commission are expressed as follows:

"First. That the employer recited in the claim was subject to the Workmen's Compensation Law at the time of the injury complained of, but that the claimant at the time of the said injury was an independent contractor and was not working for this employer and was not himself subject to the law at that time.

"Second. That the claim should be and is now rejected."

The claimant appealed to the Circuit Court of Marion County and demanded a jury trial. The only question submitted to the jury was, whether the claimant Van Koten was a workman as defined in the Workmen's Compensation Act, or was an independent contractor. The appellant, State Industrial Accident Commission, also raised, at the trial in the Circuit Court and here, the question of jurisdiction of the Industrial Accident Commission to entertain the claim. In his brief the Attorney General makes the following suggestion:

"To arrive at the correct conclusion the court should always start at one point cases such as the instant one. The first question to be determined in any case is:

"1. Is the occupation one defined as hazardous in the act?

"2. If it is hazardous, has the employer or workman rejected the act, or, if nonhazardous, has the employer elected to operate under the act?

"3. Is the contract one which brings the parties within the definition of 'employer-workman' as defined by the act?"

[AFFIRMED.

For appellant there was a brief over the names of *Mr. I. H. Van Winkle,* Attorney General, and *Mr. James West,* Assistant Attorney General.

For respondent there was a brief and oral argument by *Mr. W. C. Winslow.*

COSHOW, J.—1. We will consider the case along the lines suggested by the Attorney General. We understand that the question of jurisdiction raised by the Attorney General is based exclusively upon his contention that the work, in which the claimant was engaged at the time he received the injury, is not defined by the statute as hazardous. There is no doubt that the workman was engaged in work on a stone-crusher in a quarry. The list of hazardous occupations in Section 6617, Or. L., includes stone-crushing as a hazardous occupation, and in subdivision (1) the said section closes with this language:

"And all occupations for which rates are expressly established by Section 6624 hereof."

The injury occurred on June 17, 1922. Section 6624, Or. L., as amended by Chapter 311, Laws of

1921, page 567, provides, among other things, as follows:

"Operation (Including Repair Work) of * * stone-crushing; quarries; mines other than coal * * "

It seems there is no room for controversy regarding the work, in which the claimant was engaged at the time of the injury, being hazardous within the terms of the Workmen's Compensation Act. The commission assumed jurisdiction of the claim and treated the work, in which the claimant was engaged, as hazardous within the terms of the statute.

The final action of the Industrial Accident Commission recites that the employer, that is, the corporation operating the quarry and rock-crusher, was subject to the workmen's compensation law at the time of the injury complained of. There is no evidence that the claimant had rejected the benefits of the statute. The claimant testified that he had not rejected the benefits of the act. His testimony is undisputed.

It was stipulated in the trial in the Circuit Court that the only question to be submitted was whether or not the claimant was a workman as the term is defined in the Workmen's Compensation Act, or an independent contractor. If he was an independent contractor, he is not entitled to compensation. If he was a workman, within the terms of the Workmen's Compensation Act, he is entitled to compensation under that act. The distinction between a workman and an independent contractor, as defined by the Workmen's Compensation Act, has been defined a number of times by this court and the opinions of this court are in harmony. These opinions also harmonize with the opinions of other

110 Or.—37

states having similar statutes. The act itself defines a workman in this language:

"The term 'workman' shall be taken to mean any person, male or female, who shall engage to furnish his or her services *subject to the direction or control of an employer.*" Section 6619, Or. L., p. 2645.

*Landberg* v. *State Industrial Acc. Com.*, 107 Or. 498 (215 Pac. 594), is a well-considered case, in which earlier authorities in this jurisdiction are cited, as well as several text-writers, and decisions of courts of last resort in other jurisdictions. In page 502 of 107 Or. (215 Pac. 596), Mr. Justice Rand, speaking for the court, said:

"The test of control, which the employer has the right to exercise and to which the servant is subject, means complete control: See *Western Indemnity Co.* v. *Pillsbury,* 172 Cal. 807 (159 Pac. 721, 723). In performing the services the servant represents the will of the master and is under his complete control and direction in all of the details of the work and in the mode and manner of its performance."

In page 505 of 107 Or. (215 Pac. 597), the opinion cites, with approval, the following paragraph from Bailey on Personal Injuries (2 ed.), Section 39:

"The relation of the parties is to be determined ordinarily by the contract between the parties. If the writing was not executed in good faith or it appears that, notwithstanding such contract, supervision or control of the work was assumed by the principal or original contractor, in case of such contracts, then the application of the rule is to be determined by the conduct of the parties."

In that case the contract of employment was in writing. The same condition existed in *Anderson* v. *State Industrial Acc. Com.,* 107 Or. 304 (215 Pac. 582), where the contract was in writing.

2. As a general rule, the construction of a contract is for the court, and not for the jury. In the instant case the contract was not in writing, and the capacity, in which the claimant was doing the work, must be determined by the conduct of the parties. It is true there was only one witness. The Industrial Accident Commission did not attempt to controvert the testimony of the claimant. Different inferences might have been deduced from the testimony of that witness. That being the case, it was proper to submit the question of the capacity in which the claimant was doing the repair work to a jury. In page 512 of *Landberg* v. *State Industrial Acc. Com.*, above (215 Pac. 599), Mr. Justice RAND states the rule to be as follows:

"If the evidence produced on the trial was susceptible of two interpretations, one that the plaintiff was an independent contractor, and the other that he was an employee of the Security Construction Company, then the finding of the jury would conclusively determine that question, but as there is no room for any reasonable mind to draw any conclusion from the evidence except that plaintiff was an independent contractor at the time of the injury, it becomes our duty to hold, as a matter of law, that there was no evidence to sustain the finding of the jury."

In *Geldard* v. *Marshall*, 43 Or. 438, 444 (73 Pac. 330, 331), Mr. Justice BEAN states the rule thus:

"The rule is that if two inferences may be legitimately drawn from the facts in evidence, one favorable, and the other unfavorable, to the defendant, a question is presented which calls for the opinion of the jury."

This excerpt is cited with approval in *Galvin* v. *Brown & McCabe*, 53 Or. 598, 608 (101 Pac. 671). In *Farrin* v. *State Industrial Acc. Com.*, 104 Or. 452

(205 Pac. 984), Mr. Justice BROWN considered the identical question under consideration in the instant case quoted, with approval, the above excerpt from *Galvin* v. *Brown & McCabe,* 53 Or. 598 (101 Pac. 671). A number of other authorities, to the same effect, are collated in that opinion by Mr. Justice BROWN.

The following testimony of the claimant is sufficient to demonstrate that different minds might have reached different conclusions as to the capacity in which the claimant was working at the time he was injured.

"Direct Examination.

"Q. Now Mr. Van Koten, what business are you in?

"A. Blacksmith.

"Q. Where are you located?

"A. Jefferson.

"Q. You do a general blacksmithing business?

"A. Yes.

"Q. Who is this concern who did this work at the place at which you were injured?

"A. The Puget Sound Bridge & Dredging Co.

"Q. Just state how you happened to be there?

"A. Well, about five-thirty on June 17th, Sunday morning, I believe, Mr. Potter, their foreman, come and asked me if I would help them get some concaves out of the crusher. * *

"Q. Just tell what was done there?

"A. Well, when the foreman come and got me out of bed he told me to come and help them get these concaves out of the crusher. They had worked on it all night, and they couldn't move it. These concaves are welded in and when they are in they are zinced in, you have to put them in solid, and those pieces between them—well, I don't know, they differ from a quarter to half an inch, that is a solid piece of metal, and before you can get it out, you have to cut the zinc out from between them, and

that is what I was doing, I had to cut the zinc from between the concaves so they could loosen them.

"Q. What did you take with you when you went over there?

"A. My cutting outfit, regular welding outfit.

"Q. When you went there, who instructed you what to do?

"A. The foreman.

"Q. Who was he?

"A. Potter.

"Q. Who showed you how to do it?

"A. Potter.

"Q. Did you do it alone or have any help?

"A. No, there was help there.

"Q. Who furnished the help?

"A. The company, I suppose.

"Q. Who directed what they should do?

"A. Mr. Potter.

"Q. Did you have any supervision over them?

"A. Not a bit."

The witness then proceeded to describe how he was injured while trying to assist in removing the concaves from the rock-crusher.

"Q. Now at the time of the operation, the immediate operation was being conducted that resulted in this injury, were you using your cutting outfit?

"A. No, sir.

"Q. What were you doing?

"A. I was helping them pull this out.

"Q. Under whose direction were you working?

"A. The foreman.

"Q. How many men were working on the job altogether?

"A. I think four of us altogether.

"Q. Whose supervision were the other men working under?

"A. They were working under Potter.

"Q. How were you being paid, by the job?

"A. Paid by the hour.

"Q. How much an hour?

"A. A dollar an hour.

"Q. Were you hired for any length of time to do any particular thing, or anything of that kind?

"A. No, sir, I just went down to help them take the concaves out of that crusher, if it had took us a week I would have been there.

"Q. There wasn't any price for which you—you were to get paid by the hour for as many hours as it took?

"A. Yes.

"Cross-examination.

"Q. You used to work on that rock-crusher, did you not, crushing rock?

"A. Yes, sir.

"Q. How long since you worked on it, running the crusher, crushing rock?

"A. How is that?

"Q. How long has it been since you worked on it crushing rock.

"A. 26th of March. * *

"Q. You are running a blacksmith-shop are you not?

"A. Yes.

"Q. Did you buy your blacksmith-shop about that time?

"A. The 26th of March? Yes.

"Q. And you quit working on the rock-crusher to go to running a blacksmith-shop of your own?

"A. Yes, sir. * *

"Q. Whose equipment were you using when you were cutting out the zinc?

"A. My own.

"Q. And that was the equipment you used in your blacksmith-shop, wasn't it?

"A. Yes.

"Q. How did it happen you took your equipment out there to do this work?

"A. How did it happen?

"Q. Yes. What were the specific circumstances that—

"A. Why, to burn the zinc out from between these concaves.

"Q. Did you render a bill to the people for whom you were doing that work?

"A. Yes, sir.

"Q. I will ask you whether or not you did not charge for so much labor at so much per hour, at $1 per hour?

"A. Yes.

"Q. I will ask if you did not also charge for certain materials?

"A. Yes.

"Q. I will ask you if you did not also make a charge for making the trip out into the country?

"A. Yes, sir.

"Q. Have you a copy of the bill you so rendered?

"A. I have not."

A bill rendered to the claimant was introduced, which is as follows:

"Jefferson, Oregon, June 21–23.

M——A. C. U. Berry,
    Marion.
       In Account with
          GEORGE VAN KOTEN,
           General Blacksmithing.

Horse Shoeing                  Oxyacetylene
  a Specialty                 Welding.
          All work guaranteed.

| | | |
|---|---|---:|
| June 12. | 2 tanks gas | $10.00 |
| | 7 hours time | 7.00 |
| | 2 trips to crusher with car | 4.00 |
| June 17. | 3 hrs. time | 3.00 |
| | gas | 4.00 |
| | car | 2.00 |
| | | $20.00 |
| | | 30.00 |

           Euh.
           DR 69
        . S. Operation.
             OK.
             7/3."

"Q. Now Mr. Van Koten, you used that oxyacetylene machine in your blacksmith-shop from time to time, did you not?

"A. Yes, sir.

"Q. And of course you are familiar with its operation?

"A. Yes, sir.

"Q. And you took it with you in your own car to the place where this work was to be done?

"A. Yes, sir.

"Q. The foreman was not familiar with the operation of that oxyacetylene welder, was he?

"A. I don't know.

"Q. Did you operate that oxyacetylene welder according to your own ideas or under the detailed instructions of the foreman?

"A. *I operated the torch under his instructions; he told me where to cut, and what concave to work on.*

"Q. He told you what work he wanted done?

"A. Yes, sir.

"Q. And then you went ahead and did the work according to your own ideas in the operation of the torch, didn't you?

"A. I handled the torch, yes. When I got hurt I wasn't using the torch. I was using their tools.

"Q. What were you doing?

"A. I was helping them pull out this concave that was still tight. * *

"Q. This rock-crusher was not in operation crushing rock at the time, was it?

"A. I don't think so, not that day.

"Q. Well, you know whether it was?

"A. No.

"Q. You were not working on it crushing rock?

"A. No.

"Q. But you were working on it repairing it?

"A. Yes, sir.

"Q. Now what time is represented by this three hours that you have included in this bill, does that include the time going out to the work?

"A. Yes, sir.

"Q. You started to count your time from the time you left your shop?

"A. Yes, sir.

"Q. Until the time you returned to your shop?

"A. Until the time I got hurt. * *

"Redirect Examination.

"Q. * * Counsel has referred to the equipment you had out there; who told you to bring that equipment?

"A. The superintendent.

"Q. What was his name?

"A. The first time, Carl Johnson.

"Q. You had different superintendents?

"A. Yes.

"Q. Foreman or superintendent?

"A. He was the general superintendent and I worked under his instructions at that time." (Referring to some work done previous to the time he was injured.)

This evidence clearly discloses that different minds might arrive at different conclusions as to whether or not the claimant was a workman or an independent contractor.

"The test by which to determine whether one person is another's employee, within the rule making the employer liable for injuries resulting from the negligence of his employee, is whether the alleged employer possesses the power to control the other person in respect to the transaction out of which the injury arose. The court cannot determine, as a question of law, that the rule of *respondeat superior* does not apply, unless the evidence shows conclusively that the alleged employer possessed no such power of control." 1 Honnold on Workmen's Compensation, § 49, pp. 167 and 168.

The testimony quoted above, that the claimant was under the control of the foreman of the employer, is not disputed. The jury, therefore, had a right to infer that he, the claimant, was a "work-

man'' as defined in the Workmen's Compensation Act.

"In the ordinary acceptance of the term, one who is engaged to render services in a particular transaction is not an employee; the term 'employee' embracing continuity of service, and excluding those employed for a single and special transaction." 1 Honnold on Workmen's Compensation, § 49, p. 170.

3. Under the theory of the appellant the jury might have found from the foregoing testimony that the claimant was an independent contractor. The question was, therefore, one of fact for the jury to determine: *Grant* v. *State Industrial Acc. Com.,* 102 Or. 26, 46 (201 Pac. 438), and cases there cited; *Stark* v. *State Industrial Acc. Com.,* 103 Or. 80, 102 (204 Pac. 151).

The matter was submitted to the jury under proper instructions from the court. Under the authorities heretofore cited, we have no doubt that different inferences could be drawn from the evidence deduced at the trial. We cannot disturb the judgment based upon the verdict of the jury.

The case of *Streby* v. *Industrial Acc. Com.,* 107 Or. 314 (215 Pac. 586), is very similar to the instant case. In that case the Circuit Court found as a matter of law that the claimant was a workman and not an independent contractor. This court, in a well-considered opinion by Mr. Justice BROWN, after thoroughly considering the law and the facts, affirmed the Circuit Court.

The judgment of the Circuit Court is affirmed.

AFFIRMED.

McBRIDE, C. J., and BURNETT and RAND, JJ., concur.