Argued September 15; reversed October 19, 1943

# STOUT *v.* STATE INDUSTRIAL ACCIDENT COMMISSION

(141 P. (2d) 972)

Before Bailey, Chief Justice, and Belt, Rossman, Kelly, Lusk, Brand and Hay, Associate Justices.

*Walter H. Evans, Jr.*, Assistant Attorney General (I. H. Van Winkle, Attorney General, and C. L. Marsters, Assistant Attorney General, of Salem, on the brief) for appellant State Industrial Accident Commission.

*Porter J. Neff*, of Medford (Neff & Frohnmayer, of Medford, and W. T. Miller, of Grants Pass, on the brief) for intervenor and appellant.

*George M. Roberts*, of Medford (O. S. Blanchard, of Grants Pass, on the brief) for respondent.

KELLY, J. The decisive question here is whether the record presents substantial testimony to prove that within the meaning of the Workmen's Compensation Act, at the time plaintiff sustained the injury to his hand and arm, he was a workman employed by the intervenor Brown.

The section of the statute defining the terms employer and workman, consists of two paragraphs. Paragraph 1 thereof is as follows:

"The term 'employer', used in this act, shall be taken to mean any person, including receiver, administrator, executor or trustee, who shall contract for and secure the right to direct and control the services of any person, and the term 'workman' shall be taken to mean any person who shall engage to furnish his or her services, subject to the direction and control of an employer."

The second paragraph of said section is as follows:

"If any person engaged in a business and subject to this act as an employer, in the course of such business shall let a contract the principal purpose of which is the performance of labor, such labor to be performed by the person to whom the contract was let or by such person with the assistance of others, all workmen engaged in the performance of the contract shall be deemed workmen of the person letting the contract, if the person to whom the contract was let was not engaged in a separate business involving the occupation covered by the contract at the time of commencing the performance of the contract." Section 102-1703, O. C. L. A. Vol. 7, p. 623.

During the time involved in this proceeding, Mr. Brown, the intervenor, was operating a chrome mine in California, located about twenty-five miles west of O'Brien, Oregon, and about six miles south of the Oregon-California line.

The plaintiff was associated with Mr. Nixon in operating a placer gold mine known as the Esterly mine located about four miles east of O'Brien, in Josephine county, Oregon, near the California line. Mr. Nixon had leased that mine from Mr. Hales, the owner, who resides in Chicago, Illinois. A part of the equipment of the Esterly mine consisted of a woodworking plant and shop which was operated by water power. A dado saw and a cut-off saw comprised a part of this woodworking plant.

The evidence discloses that sometime early in September, 1941, Mr. Brown sought plaintiff and told him that he, Brown, had been having timbers framed by hand and suggested that by the use of the machinery at the Esterly mine such framing could be done for less than it had been costing.

We quote from plaintiff's testimony:

"Q. What, if anything did Mr. Brown say to you?

A. Mr. Brown said that he had been framing timbers by hand, and recalled that we had some machinery there that might do the job cheaper than the way he had been doing it, and was interested to know whether I could do them or not. I told him that I thought that I could, but that I would need a helper to assist. I thought they were too heavy to handle alone. Mr. Brown was interested in the cost, whether it would be cheaper than the way he had been doing it by hand. I told him that I thought no matter how we handled it the power machinery would be cheaper than the way he had been doing. Then he wanted to know the price per piece. I told him that was impossible. I didn't know what the price per piece would be, doing it that way, but that I would work for One Dollar ($1.00) an hour and fifty cents per helper, which I could get for him.
*  *  *  *  *

Q. Well was there anything said relative to repair of the equipment?

A. Yes, I stated the repair of the equipment was in bad repair and that would have to be repaired, and he agreed that we—Mr. Babcock and I should repair the machinery on an hourly basis. I told him the price per piece couldn't be determined until I ran a number of pieces but that I might do them by the piece later on or by the hour. He said he was satisfied either way would be cheaper than the way he had been doing and that was more or less the way the price was left."

Plaintiff testified further that Mr. Brown then said that "we would go ahead on that basis until we could see what the price per piece actually was."

The plaintiff, Mr. Stout, testified that he thought the owner of the machinery would have had no objec-

tion to any one using it who would put it in repair. There is no testimony to the effect that either plaintiff or his partner Mr. Nixon, or any one else, had authority from the owner, Mr. Hales, to permit any one not in their service or under their supervision to use the saws mentioned. As far as this record discloses, Mr. Brown himself could not have used such saws.

As to Mr. Brown's alleged control of the operation of framing the timbers by Mr. Stout, Mr. Brown testified as follows:

"Q. Did you ever attempt in any way to direct the manner in which Mr. Stout was to have these timbers framed?

A. I wrote him a note which I believe was marked as evidence No. 1 here, the specification of sizes. Other than that, no.

Q. You never attempted to tell him how to run the saws?

A. I had no idea, I never run that type of equipment, I had no idea, I never saw it run and wouldn't have known how anyway to have told him.

Q. Was anything said to you at that time that you were to have control of that woodworking equipment?

A. There absolutely was not.

Q. Did he at that time give you the key to the premises and say you had a right to come in there?

A. He did not. I felt I had no right to go on there. I wasn't cutting my timbers."

It is true that Mr. Brown sent timbers by his truck to the Esterly mine to be framed and either gave or sent to plaintiff the following written message:

"To C. R. Stout,
    Posts 74 Caps 56 Make ½ each Frame both ends of timber This is length over all.
                                   Eugene B."

Referring to the provisions of the statute, above quoted, the question presents itself, did Mr. Brown secure the right to direct and control the services of Mr. Stout; or, to state it differently, did Mr. Stout engage to furnish his services subject to the direction and control of Mr. Brown? Based upon the record, as we understand it, this question must be answered in the negative.

To have control of Mr. Stout's services in repairing and using Mr. Hales' machinery, Mr. Brown would have had to have the right of access to and the right to use such machinery. As far as the record speaks, it discloses that only Mr. Nixon, Mr. Stout and their employees had that right.

It will be noted that the second paragraph of section 102-1703, O. C. L. A., Vol. 7, as hereinabove quoted, includes within the scope of the term "employer" only those who are engaged in business and subject to the Workmen's Compensation Act.

■ It cannot be said that those engaged in business outside of the state of Oregon are subject to the Oregon statute. The only indication in the record that Mr. Brown was engaged in business in Oregon is his statement to the effect that his truck drivers in California hauled ore to Grants Pass to be dumped on the railroad tracks in gondolas.

■ Subdivision (g) of section 102-1725, O. C. L. A., Vol. 7, designates motor vehicle transportation of property as one of the hazardous occupations to which the Workmen's Compensation Act is applicable in the following terms:

"(g) When not engaged in interstate commerce, the transportation of property for hire by motor vehicles."

It is a fair inference that the trucks used by the drivers mentioned by Mr. Brown were owned by Mr. Brown. The ore also belonged to Mr. Brown. Transporting one's property does not constitute transportation for hire. *Weller v. Kolb's Bakery & Dairy*, 176 Md. 191, 4 A. (2d) 130, 132.

Moreover, a contract for the framing of timber, such as those in suit, could not be said to have been made in the course of a transportation business conducted merely by operating motor trucks.

■ It is manifest, therefore, that Mr. Brown was not subject to the Workmen's Compensation Act when he entered into the contract with Mr. Stout for framing timbers. It follows that subdivision two of section 102-1703, supra, is not applicable to the facts herein.

■ It is equally obvious from the undisputed testimony that by the contract in suit Mr. Brown did not secure the right to direct and control the services of Mr. Stout, and, hence, Mr. Brown was not an employer and Mr. Stout was not a workman within the meaning and intendment of the Workmen's Compensation Act.

*Van Koten v. State Industrial Accident Commission*, 110 Or. 574, 223 P. 945, cited by plaintiff, is a case wherein the claimant was injured while working under the direct supervision of the foreman of the employer. When using the oxyacetylene welder, the claimant operated it under the foreman's instructions. When he was injured, claimant was not using the welder, but the employer's tools.

The facts in *Streby v. State Industrial Accident Commission*, 107 Or. 314, 215 P. 586, also cited by plaintiff, disclose substantial testimony that the employer, Mr. E. J. Turner, directed the work that the

claimant was doing. The claimant testified that Mr. Turner had a right to direct it. Mr. Turner testified that he did direct it.

In *Farrin v. State Industrial Accident Commission,* 104 Or. 452, 205 P. 984, likewise cited by plaintiff, claimant's decedent was working in a sawmill owned and operated by G. S. Parmele & Son. In the operation of the mill, a crew of four men was required. The claimant was one of that crew.

Obviously, the three cases last above mentioned are distinguishable from the instant case.

In *Landberg v. State Industrial Accident Commission,* 107 Or. 498, 215 P. 594, also cited by plaintiff, it was held that claimant was an independent contractor.

The judgment and award of the circuit court is reversed and the proceeding dismissed.