Argued October 16, affirmed December 19, 1951

# BUTTS *v.* STATE INDUSTRIAL ACCIDENT COMMISSION

## 239 P. 2d 238

*Glen McCarty,* of Portland, argued the cause and filed a brief for appellant.

*Ray H. Lafky,* Assistant Attorney General, of Salem, argued the cause for respondent. With him on the brief was George Neuner, Attorney General, of Salem.

Before BRAND, Chief Justice, and ROSSMAN, LUSK, WARNER and TOOZE, Justices.

BRAND, C. J.

The plaintiff is the widow of David A. Butts and brings this action against the State Industrial Accident Commission for the benefit of herself and minor

children. She alleges that Butts was an employee of Hayden Laurance and Benjamin Melton, operating under the assumed name of South Deer Creek Lumber Company, hereinafter called the "Lumber Company." She alleges that the Lumber Company and Butts were subject to the provisions of the Workmen's Compensation Act; that in the course of such alleged employment he was operating a caterpillar tractor for the purpose of skidding logs and that the tractor overturned and Butts was killed. The answer alleges that:

> "* * * David A. Butts, the deceased, was engaged in the business of logging at the time he commenced performance of his contract with Hayden Laurance and Benjamin Melton; that said David A. Butts was performing a definite contract to yard all the logs from a definite tract without supervision or control as to means or manner thereof; and that David A. Butts in the performance of such contract was an independent contractor."

The reply is a general denial. By stipulation the action was tried by the court without a jury. It was further stipulated that the only issue before the trial court was whether plaintiff's husband was an employee or an independent contractor. The court found that Butts was an independent contractor and rendered judgment for the defendant. In her appeal plaintiff presents a single assignment of error. It reads as follows:

> "The court erred in its findings that the decedent was an independent contractor and not an employee within the meaning of the Workmen's Compensation Act, because the evidence does not support the finding, and in entering its judgment of dismissal of appellant's complaint with prejudice."

██ When sitting without a jury, the findings of the court upon the facts "shall be deemed a verdict * * *." OCLA, § 5-503. Since the adoption of constitution Article VII, section 3, we have been without power to set aside a verdict or the findings of fact of a trial court merely because the evidence is "insufficient to support a verdict" as that phrase was used by this court prior to the adoption of the amendment. The rule stated in *Multnomah Co. v. Willamette Towing Co.*, 49 Or 204, 89 P 389, upon this issue is no longer the law. While we are not strictly required to do so, we will treat appellant's assignment of error as an assertion that there was no substantial evidence supporting the findings of the trial court. Our sole duty in this case is to determine if there was any such evidence.

In *Bowser v. State Indus. Accident Comm.*, 182 Or 42, 185 P2d 891, the sole question presented was whether the injured person was an employee of an independent contractor at the time of the accident. This court said:

"* * * our determination of the question is not to be based upon an original inquiry. We are limited by the findings of fact of the trial court so long as they are supported by substantial evidence. * * *"

And see *Stout v. State Ind. Acc. Com.*, 172 Or 346, 141 P2d 972.

██ Under the statute, the term "workman" means "any person who shall engage to furnish his or her services, subject to the direction and control of an employer." OCLA, § 102-1703. If compensation is to be had under the provisions of the Workmen's Compensation Act, it is incumbent upon the claimant to show that the injured person was a workman employed

by an employer who was subject to the act, (OCLA, § 102-1728), and that while so employed he sustained personal injury by accident rising out of his employment. OCLA, § 102-1752. The status of the injured person as a "workman" is ordinarily a question of fact for the jury. *Carson v. State Indus. Acc. Comm.*, 152 Or 455, 54 P2d 109. It is generally held that:

"* * * The question whether an injured workman occupies the status of employee, so as to bring him within the coverage of the statute, is ordinarily one of fact, but may become a matter of law where the indicia and elements bearing on the question are sufficiently clear and positive. * * *" 58 Am Jur 872, Workmen's Compensation, § 461. *Moore v. Clarke*, 171 Md 39, 187 A 887, 107 ALR 924.

The trial court made the following findings of fact from which it concluded as a matter of law that the deceased was an independent contractor:

"That on July 20, 1949, one David A. Butts sustained accidental injuries while operating a caterpillar tractor he owned with which he was 'skidding' logs. The operation of the tractor was pursuant to an oral contract with Hayden Laurance and Benjamin Melton doing business as South Deer Creek Lumber Company. David A. Butts agreed to move all logs from two 'landings' about a quarter of a mile apart on a certain tract of timber with compensation set at $4.00 per thousand board feet. The only exception with regard to the agreement to move all of the logs was that a few logs were to be trucked out by other parties. Mr. Butts operated without restriction as to hours of labor, employment of assistants or substitutes and without direction or control as to manner or method of performing the work except as to result. Mr. Butts immediately prior to this contract had logged some of his own timber in which connection Hayden Laurance and Benjamin Melton contracted the log hauling. There was no restriction in the oral con-

tract Mr. Butts was performing at the time of his death which would prevent operation of the caterpillar for others.

"There was nothing in the contract with respect to the right of either party to terminate the contract and though the testimony of Hayden Laurance is to the effect in his opinion that each party had that right, the fact that one price was set for skidding logs from two landings outweighs this personal opinion. In other words, when Mr. Butts started skidding from the second landing each round trip would be a half mile longer and therefore a more costly operation. Cessation of operations after performing the most profitable part would certainly have given rise to a dispute. The facts indicate that there was not a right for either party to terminate at will."

■ We will now consider whether there was substantial evidence tending to support the findings of the trial court. The relationship between Butts and the Lumber Company was the outgrowth of an oral contract of July 1949. The testimony as to the exact terms of the agreement leaves much to be desired. It comes from the witness Laurance who was one of the partners in the Lumber Company. It is in many respects inconclusive and in some respects contradictory. In part it consists of specific statements concerning the agreement and in part of statements by the witness as to his feeling concerning his rights under the agreement. It was therefore peculiarly the function of the trier of the facts to determine the specific terms of the contract. In weighing the testimony upon this issue, the trial court may have come to the conclusion that the witness had an interest in the outcome of the case. Laurance had employed an attorney for the plaintiff. The contribution to the Industrial Accident Commission made by the company on account of the alleged

employment of Butts was tendered after the accident. If the plaintiff prevailed against the Accident Commission there would perhaps be less danger of litigation between the plaintiff and the Lumber Company. Laurance testified that the agreement was that Butts should move logs. He was to take them from the place where the company had them "cold decked" down to the mill, approximately a quarter of a mile distant, and was then to cold deck the same logs at the mill. He was to be paid $4 per thousand according to the mill scale when the Lumber Company got the returns from the mill. The work was to be done by the use of the caterpillar tractor which was the property of Butts. The logs which the Lumber Company brought in from the woods to its cold deck were the ones Butts was to take to the mill. All the logs in the cold deck were to be so taken. The agreement was that "he had to have enough logs there to keep the mill going." Butts had been working only four days when he was killed. During that time he had built roads into the mill to facilitate the transportation of the logs. For this work his only pay would have been the agreed compensation for his subsequent work for hauling logs over the road. Before the agreement was made with the Lumber Company Butts had been working for himself on his own timber, and the partners, constituting the Lumber Company, had loaded logs for Butts on contract. Butts was still working on his own job when the Lumber Company persuaded him to come to its own place and haul logs for them. The testimony of Laurance is weakened but not nullified by a later statement by the witness to the effect that Butts' job was finished before he came on the job for the Lumber Company. The fact was for the determination of the court. On the job for the

Lumber Company, Butts employed at his own expense a choker setter to assist him. Laurance did not know the name of the assistant. The Lumber Company made no contribution to the Accident Commission on account of the choker setter.

The tract from which the timber was being cut was about 30 acres in area with 200,000 feet of merchantable second-growth timber thereon. We quote from the testimony of witness Laurance:

"Q Now did you have an understanding with Mr. Butts that he was going to yard this tract for you? A Yes."

There were two landings to which the Lumber Company brought logs and from which Butts was to take them. One was approximately one-quarter of a mile further from the mill than the other. The payment to be received by Butts was the same regardless of the length of the haul. Butts started hauling logs to the mill from the nearest landing or cold deck. Witness Laurance testified:

"Q Then you and Mr. Melton had an understanding with Butts that he was to yard all the logs on that tract? A That is right."

Speaking of Butts, the witness Laurance also testified:

"MR. LAFKY: Did you tell him when to go to work and when to stop or [did] he work on his own time, more or less? A On his own time."

As a matter of fact, of the four days on which Butts worked prior to the accident, at least twice he worked only half a day. Laurance testified that some logs, presumably from the tract in question, were hauled out by truck, but only an hour a day. It is not clear whether the truck was used at all during the four days

that Butts was on the job. The witness Melton, the other partner in the Lumber Company, testified:

"Q  Did you ever give him directions as to which logs to take from the landing or how to proceed in his operation in any way or he did that more or less on his own hook? A  Butts, you mean?

"Q  Yes. A  Yes, he did that on his own.

"Q  It was your understanding he was to yard all the logs from the landing, from the various landings, into the mill at a set price of $4.00 per thousand regardless of whether you were at the front end of the property or back end? A  Yes."

The undisputed evidence shows that Butts was to furnish his own gas and oil and make all repairs on his own equipment. The witness Laurance also testified:

"Q  Did you ever give him directions as to which logs to take from the landing or how to proceed in his operation in any way or he did that more or less on his own hook? Answer: Butts, you mean? Yes. Answer: Yes, he did that on his own. * * * "

The evidence was that Butts rented some equipment known as an "arch" to be used with his tractor, and which was used by him when the accident occurred. Butts undertook to pay rental to the owners of the arch. The witness Laurance testified that if the work done by Butts was not satisfactory the Lumber Company had the right to discharge him. This was the conclusion of the witness only. It was expressly stated that the parties did not discuss what would happen if Butts quit the job.

■ We are forced to the conclusion that there was substantial evidence supporting the findings of the trial judge. Since we are not at liberty to pass upon the weight of the evidence, we need not review the testimony which tended to contradict the findings of the trial court.

The plaintiff cites the second paragraph of OCLA, § 102-1703 which reads as follows:

"If any person engaged in a business and subject to this act as an employer, in the course of such business shall let a contract the principal purpose of which is the performance of labor, such labor to be performed by the person to whom the contract was let or by such person with the assistance of others, all workmen engaged in the performance of the contract shall be deemed workmen of the person letting the contract, if the person to whom the contract was let was not engaged in a separate business involving the occupation covered by the contract at the time of commencing the performance of the contract."

■ In the Bowser case, supra, this court said:

"The second paragraph of this statute is not applicable here because the 'principal purpose' of this arrangement was not the 'performance of labor' but rather the hauling of logs." 182 Or 42 at 47.

The decision in the Bowser case is controlling here.

Many circumstances are considered relevant in determining whether a person is an employee or an independent contractor. Under the Workmen's Compensation Act the right to direct and control the services of any person when such right is specifically contracted for and secured is conclusive evidence of a relationship of employer and employee. OCLA, § 102-1703. And so it is said that the right of control is a primary test. But in most cases, the true nature of the contract as to right of control is not expressed and must be ascertained by the application of many secondary tests. Among many such tests, we recognize as significant, the following: (1) Was the principal purpose of the contract the "performance of labor",

or, for example, the hauling of logs by machinery? (2) Was the injured person engaged in an independent employment? (3) Was he employed to do a specific piece of work? (4) Was he to work according to his own methods without control except as to the results? (5) In the absence of express agreement, vesting the right of control in the alleged employer, was any control exercised in fact? (6) Did the injured workman determine his own hours of employment? (7) Was he paid by the hour or by the piece? (8) Did he use his own equipment, such as a power caterpillar? (9) Did he have a right to, or did he employ his own assistants? (10) Did he rent equipment at his own expense? (11) Did he furnish supplies and make repairs on equipment at his own expense? (12) What rights did the parties have to terminate the employment? Did the right of the alleged employer to discharge the injured workman exist only if the end results were unsatisfactory or for other reasons?

■■ When the secondary "indicia" do not all point to the same conclusion, and especially when as in this case, different inferences may be drawn from the testimony, the existence of the employer-employee relationship becomes a question of fact for the trial court or jury. The plaintiff had the burden of proof that the decedent was an employee and not an independent contractor. *Vient v. State Industrial Acc. Comm.,* 123 Or 334, 262 P 250.

Assuming that some portions of the evidence may have pointed to the relationship of employer-employee, there was certainly substantial evidence to the contrary. The court decided the facts against the party having the burden of proof. The judgment for the defendant must be affirmed.