Argued June 24, reversed July 14, 1925.

# AGNES LANGE v. ST. JOHNS LUMBER COMPANY.

### (237 Pac. 696.)

**Navigable Waters—Dock may Protrude into Willamette River and Still be on Private Property.**

1. In view of Laws of 1872, page 129, as amended by Laws of 1874, page 76, and Laws of 1876, page 69, whereby State of Oregon granted to owners of uplands abutting on Willamette River all lands opposite such holdings between high and low water marks, a private dock may protrude into the river and still be wholly on private property, and not within limits of water highway.

**Negligence—Care Required as to "Invitee" and "Licensee."**

2. One on premises by invitation, express or implied, is an "invitee," whereas one who is there merely by permission or toleration is mere "licensee," and, as to the former, owner of premises must use reasonable care, whereas to latter he owes no greater duty than to avoid willful or wanton injury.

**Wharves—Person Injured on Lumber Dock While Visiting Captain of Ship Held Mere Licensee.**

3. Plaintiff, injured by falling into unguarded opening in defendant's lumber dock, while returning from visit to captain of ship, moored there for purpose of taking cargo, plaintiff's presence on premises being without knowledge or invitation of defendant, *held* a mere licensee, and, there being no evidence that defendant willfully or wantonly injured plaintiff, defendant was not liable therefor.

From Multnomah: WALTER H. EVANS, Judge.

Department 1.

REVERSED.

2. Distinction between licensee and invitee, see note in **Ann. Cas.** 1913C, 570.

Injuries to persons on or about wharves, see note in **Ann. Cas.** 1916C, 139, 164, 167, 170. See, also, 20 R. C. L. 55.

3. Land owner's liability to persons injured by dangerous premises, see note in 31 **Am. St. Rep.** 524.

Liability of owner of premises for injury to licensee, see notes in 23 **Am. Rep.** 183; 26 **Am. Rep.** 562; 42 **Am. Rep.** 315.

Duty of owner of premises to protect licensee against hidden dangers, see note in 17 **L. R. A. (N. S.)** 916. See, also, 20 R. C. L. 57.

115 Or.—22

For appellant there was a brief over the name of
*Messrs. Wilbur, Beckett & Howell,* with an oral
argument by *Mr. R. W. Wilbur.*

For respondent there was a brief over the names
of *Mr. G. G. Smith* and *Mr. Henry E. McGinn,* with
an oral argument by *Mr. Smith.*

BURNETT, J.—The plaintiff, a woman of the age
of forty-eight years and hitherto in perfect health,
brings this action against the defendant, alleging,
among other things:

"That during all times herein mentioned the de-
fendant was the owner, lessor, in possession and had
charge of and controlled a certain large dock situate
in the County of Multnomah, State of Oregon, ex-
tending from the shore to and protruding into said
river,"

meaning the Willamette River, which she alleges is
a navigable. stream and a public highway. After
averring that a sea-going vessel engaged in loading
merchandise was moored alongside of said dock at
the time of the occurrences stated in the pleadings,
she says in substance that the only access to said
vessel from the shore line, and the one used by the
general public, is across said dock; that on the night
of March 4, 1922, while she was walking there com-
ing from the vessel, she fell into an unguarded
opening which was in that portion of the dock ex-
tending into the river, whereby she received injuries
to her damage. For her specifications of negligence
charged to the defendant she avers:

"That the proximate cause of said injury to plain-
tiff was the careless, reckless, wrongful, unlawful and
negligent acts of the defendant in (1) allowing said
opening in said dock to be unguarded knowing, or
with the exercise of reasonable care could and would

have known that persons passed from the shore line over and across said dock to and from said vessel. (2) In failing to place a guard around and about said opening.    (3) In failing to place a danger or warning signal at said opening on said dock.    (4) In failing to keep a light upon said dock whereby persons crossing said dock could observe said opening and the danger in connection therewith.    (5) For failure to cover said opening during the hours of the night when said opening was not being used.    (6) In establishing, maintaining, employing and operating invisible, dangerous instrumentalities, devices and agencies at the place aforementioned, the same being upon and along a public highway, and without giving any notice or warning of the location or existence thereof or the danger in connection therewith.    (7) In establishing, maintaining, employing and operating dangerous instrumentalities, devices and agencies, at the place aforementioned, whereby a certain area or portion of said place, the same being a public highway, became dangerous premises without establishing or maintaining a guard or safety device to prevent persons from coming in contact therewith and being injured thereby, including a cover or safety device over said opening.    (8) In establishing, maintaining, employing and operating dangerous devices and agencies upon a public highway at the place aforementioned, without establishing and defining by properly marked notices and signals said dangerous area or by enclosing the same thereby preventing injury to plaintiff and pedestrians.''

The averments about the river, the ownership of the dock, and the presence of the vessel at the dock are admitted. The rest of the complaint is denied. It is stated in the answer, in substance, that the plaintiff with others went aboard the vessel during the evening of March 4, 1922, and remained there until the following morning between 2 and 3 o'clock, when she with others started to leave the boat, her destination being unknown to the defendant. It is

averred that at the time she was a trespasser on the dock and was not present there by any invitation, express or implied, on the part of the defendant. It is said likewise, that leading from the portion of the dock where said vessel was moored there was an open and safe passageway from the boat to the street adjacent to the dock; that at the time of the accident there were no lights upon the dock and that the plaintiff was unfamiliar with the dock and was aware of the absence of lights thereon; that a guide in whose charge she placed herself was a person who had been on board with them and was in no condition to guide her safely across the dock, and that instead of going along the regular safe pathway, the plaintiff and her guide and party turned off from the same into a side alley between some lumber piles where the plaintiff and her guide fell through a hole in the dock to a platform below, this being the accident referred to; that no one of them carried any light, although it was dark at the time of the accident, so that plaintiff and her guide wandered off from the safe path to the street and fell into the hole as stated.

Contributory negligence is charged to the plaintiff in various forms. The new matter in the answer was traversed by the reply in many particulars. At the close of the plaintiff's testimony the defendant moved for a judgment of nonsuit, and at the close of all the testimony moved for a directed verdict in favor of the defendant, both of which motions were denied, and these rulings of the court are among the assignments of error. There was a verdict and judgment in favor of the plaintiff and defendant appeals.

1. As a foreword it may be stated that the complaint gains no additional force from the averment that the dock protrudes into the Willamette River.

By an act of the legislative assembly in 1872, amended in 1874 and 1876 (Laws 1872, p. 129; Laws 1874, p. 76; Laws 1876, p. 69), the State of Oregon granted and confirmed to the owners of uplands abutting on that river all the lands opposite such holdings between high and low water marks. Hence it might be that the structure involved would protrude into the river and still be wholly on private property and not within the limits of the water highway. This theory is strengthened by the plaintiff's averment that the defendant is the owner and in possession of the dock.

The substance of the testimony on behalf of the plaintiff is that she and her husband and two daughters had been invited by the captain of the vessel to dine with him on board the ship, and in pursuance of the invitation they arrived there between 8 and 9 o'clock in the evening of March 4th. As they came to the dock they met a man, who apparently was a watchman, and inquired about where the vessel was docked. He pointed toward the place and started to conduct them thither, when the captain came up and escorted them aboard, after traversing the dock. After dining they remained there until about 2 o'clock of the following morning, when they left the ship conducted by the mate. The testimony shows that the route adopted by them in going aboard was an open way some twelve or sixteen feet wide, kept open for the purpose of allowing lumber trucks to pass each other in delivering lumber about the dock. After leaving the vessel by its gang-plank they were required to go up an incline from the lower part of the dock to the upper part on a level with the lumber-yard near where the vessel was situated. The testimony shows it was quite dark at the time. The

moon had set about two hours before and the darkness is described all the way from so dark that the people could not see, but could only feel the lumber piles, to a statement that the people could only see very dimly. The evidence shows that after reaching the head of the incline, the parties proceeded a little way along the open way when they turned off to the left between some lumber piles and soon came to the hole in the dock. This was the opening on the chute by which timbers were conveyed into the river. The plaintiff and the guide and one of her daughters, all adults, fell into this opening, whereby the plaintiff sustained injuries of which she complains.

So far as here involved, the dock is used exclusively by the defendant as a storage place for lumber, which it ships to other points. The vessel was then moored to the dock for the purpose of taking on a cargo of lumber from the defendant's sawmill, also on the dock. The only testimony directly upon the point of the purpose of the plaintiff's presence on the dock was given by her husband as follows:

"You had no business there that night with the lumber company, did you?

"A. Not with the lumber company.

"Q. You didn't know any of the officers?

"A. No.

"Q. Or anybody connected with the mill company?

"A. No.

"Q. And you were there for the sole purpose, and nothing else, of visiting on the ship?

"A. Yes.

"Q. Without any business, or anything of that kind, from the lumber company?

"A. No.

"Q. And you were not invited there by the lumber company, were you?

"A. No.

"Q. You were invited only by the captain?
"A. Yes."

The testimony is exclusive that the only use to which the dock is put is a place for the manufacture and storage of lumber for shipment. It is described as having a frontage on the river of about twelve hundred feet by some five hundred feet in width. There is some testimony to the effect that at various times people had been seen walking about and sitting on the dock, apparently for pleasure, but there is no testimony that the company directly permitted this or encouraged it. Neither does it appear that this practice was indulged in in the after part of the night or at any time during the hours of darkness. It may be conceded that those in charge of the vessel which was moored there for the purpose of taking on a shipment of lumber from defendant's yard would have a right to use the dock in pursuance of that situation, for all the purposes reasonably connected with making shipment and loading the vessel.

2. There is a difference between one present on premises by an invitation, express or implied, and one who is merely there by permission or toleration. The one is termed an invitee and the other mere licensee. As to the former, the owner of the premises is bound to use reasonable care to prevent the infliction of hurt upon the invitee: *Keeran* v. *Spurgeon Mercantile Co.*, 194 Iowa, 1240 (191 N. W. 99, 27 A. L. R. 579). As to the latter, the owner of the premises owes no greater duty than to avoid willful or wanton injury to the licensee. It is said that:

"A licensee is a person who is neither a passenger, servant, nor trespasser and not standing in any contractual relation with the owner of the premises, and is permitted to come upon the premises for his own interest, convenience, or gratification. Thus one who

enters on premises as a visitor, or to transact business with defendant's employees in which defendant has no interest, or to view machinery, or to seek employment, is a bare licensee." 29 Cyc. 451.

The same volume on page 445 enunciates the precept as follows:

"The rule is well settled that an owner of premises owes to a licensee no duty as to the condition of such premises, unless imposed by statute, save that he should not knowingly let him run upon a hidden peril, or wantonly or wilfully cause him harm. The licensee enters upon the premises at his own risk and enjoys the license subject to its concomitant perils."

"In *Vanderbeck* v. *Hendry,* 34 N. J. L. 467, the Supreme Court held that mere permission to pass over dangerous lands, or an acquiescence in such passage for the benefit or convenience of the licensee, creates no duty on the part of the owner except to refrain from acts willfully injurious. The premises on which the injury in that case happened were private grounds, used for a lumber yard, on which lumber was piled, leaving passageways between the piles for the convenience of loading and unloading. The yard was not enclosed, and persons were in the habit of passing through these gangways to go from street to street. The plaintiff, out of curiosity, went into one of the gangways and was injured by the falling of a pile of lumber which had been piled in a negligent manner. The court held that an action for such injury could not be maintained; that mere permission, or passive license to enter upon lands, relieved a person entering premises from the responsibility of being a trespasser, but that he enjoyed the license, assuming the ordinary risks of the nature of the place and the business carried on upon it. * * All that may be said in favor of a mere licensee is that he is only not a trespasser, and the general rule of law is that the owner and occupier of private grounds is under no obligation to keep them in a safe condition for the benefit of trespassers, idlers, bare licensees and

others who come upon the premises for their own convenience or pleasure, however innocent their purpose may be." *Phillips* v. *Library Co.*, 55 N. J. L. 307, 310 (27 Atl. 478, 479).

In *Kelley* v. *City of Columbus*, 41 Ohio St. 263, according to the syllabus, it is held:

"A city is not liable for an injury resulting from the unsafe or dangerous condition of lands adjacent to a street where the place of danger is so far from the street that no injury can result to persons in the ordinary and proper use of the street.

"The owner of land is not liable for injury resulting from the unsafe or dangerous condition of his premises, to persons who go upon them without invitation express or implied."

*Plummer* v. *Dill*, 156 Mass. 426 (31 N. E. 128, 32 Am. St. Rep. 463), was an instance where the plaintiff did not go to the building in question to transact with any occupant of the same kind of business in which he was engaged, or in the transaction of which the building was used or designed to be used. She was in search of a servant; and for her own convenience she went there to inquire about a matter which concerned herself alone. The court said:

"The mere fact that premises are fitted conveniently for use by the owner or his tenants, and by those who come to transact such business as is carried on there, does not constitute an implied invitation to strangers to come and use the place for purposes of their own. To such persons it gives no more than an implied license to come for any proper purpose. * *

"It is well settled there that to come under an implied invitation, as distinguished from a mere license, the visitor must come for a purpose connected with the business in which the occupant is engaged, or which he permits to be carried on there. There must at least be some mutuality of interest

in the subject to which the visitor's business relates, although the particular thing which is the object of the visit may not be for the benefit of the occupant.''

In *Chesley* v. *Rocheford & Gould,* 4 Neb. (Unof.) 768 (96 N. W. 241, 14 Am. Neg. Rep. 596), the defendants were contractors for the erection of the piers and walls of a building and as such had charge of the premises on which they were at work. For the convenience of their own workmen they had a bucket of water for them to drink which was placed not far from an elevator used by them to transport brick to the workmen. Adjacent to the premises were some carpenters working on an entirely different job and for other employers. One of the carpenters being thirsty, his own employers not having furnished sufficient water for his consumption, went upon the premises occupied by the defendants and while in the act of drinking water at their bucket he was injured by a wheelbarrow which by some mishap was thrown out of the elevator in use there and fell upon his head. The syllabus reads thus:

''One entering upon another's premises with his consent, but without an invitation, and not in the discharge of a duty imposed upon him is a bare licensee, and there is no duty owed to him by the occupier except to refrain from wantonly or willfully injuring him.''

*Sterger* v. *Van Sicklen,* 132 N. Y. 499 (30 N. E. 987, 28 Am. St. Rep. 594, 16 L. R. A. 540), was a case where a mother went upon a neighbor's premises to find her children who were in the habit of playing there. In leaving she passed down some steps which were defective and broke under her to her injury, but it was held:

''A property owner owes no duty to one who goes upon his premises in search of a child who is

accustomed to play there, to have stairways thereon in a safe condition, the neglect of which will render him liable for injuries received by such person in consequence of the breaking of a step.''

In *Keeran* v. *Spurgeon Mercantile Co., supra,* the distinction between a licensee and an invitee is explained and the duty owing to each is clearly pointed out. As to the former, it was there said:

''If one goes upon premises without invitation, express or implied, the owner or occupant thereof is under no duty to look out for his safety, and if he be injured through the negligence of the owner or occupant while there without lawful right, or as a bare licensee, no recovery can be had.'' Citing authorities.

In that instance a commercial traveler had gone to the store of the defendant and told a lady clerk that he wanted to leave his grips there for a little while together with his overcoat. The clerk took the coat and went into the back part of the store, opened a door and hung it up, and the plaintiff watched her as she did this. Later in the day he came and asked for his coat and went behind the counter where customers were not ordinarily allowed and opened a door which he found there and which gave upon a flight of stairs to the basement. He fell down the stairs and in a well-considered case the court denied his recovery because he was a mere licensee and the store owed him no duty except not to willfully or wantonly injure him.

3. The record is utterly devoid of any showing that the injury happened in any highway. In fact, the plaintiff's own witnesses say the opening through which she fell was not in a street. The testimony is clear and uncontradicted that the plaintiff went upon the defendant's premises without the knowledge of

any of its officers and for purposes of her own not in any way connected with the defendant, but solely for the social pleasure of a dinner on board the vessel with the captain and at his invitation. Even the captain's invitation was not within the purview of his own business there. He was there only to take on a cargo of lumber and it is not shown that by virtue of any arrangement in which the defendant participated the matter of giving banquets was included. Clearly the plaintiff was at best a mere licensee and there is not the slightest evidence that the defendant willfully or wantonly inflicted upon her the injuries of which she complains. Indeed, the complaint does not pretend to charge wanton or willful injury.

It is not necessary to consider whether or not she was guilty of contributory negligence in going into an unfamiliar place when she knew it was dark and difficult of sight, although the case of *Massey* v. *Seller*, 45 Or. 267 (77 Pac. 397, 16 Am. Neg. Rep. 553), teaches that doctrine.

The case may safely be placed upon the ground that by her own testimony the plaintiff was present on the defendant's lumber dock in no better situation than that of a licensee; that the evidence does not show in the least any wanton or willful injury inflicted by the defendant and that at her peril the plaintiff took the premises as she found them. The judgment for the plaintiff is reversed and the cause remanded to the Circuit Court, with directions to enter a judgment of nonsuit in favor of the defendant.

REVERSED AND REMANDED, WITH DIRECTIONS.

BROWN, RAND and BELT, JJ., concur.