Argued October 5, reversed December 11, 1928.

# WILLIAM HELZER v. D. C. WAX.

(272 Pac. 556.)

For appellant there was a brief and oral arguments by *Mr. E. L. McDougal* and *Mr. Julius Cohn.*

For respondent there was a brief over the name of *Messrs. Lonergan & Wagner,* with an oral argument by *Mr. Frank J. Lonergan.*

ROSSMAN, J We do not believe that the court erred in the disposition it made of the defendant's motion to compel the plaintiff to elect whether his status at the time of the injury was that of an employee, or an invitee upon the premises. It is apparent that the defendant was not prejudiced by the manner in which the court disposed of this motion. Rules of practice in regard to such matters ought not to be rigid, but should be sufficiently yielding so that the trial court may apply them fairly as the needs of each case demand. Moreover, elections ought never be compelled in regard to the attitude an opponent will assume toward a prospective legal problem. Professor Clark, in his very valuable recent volume on Code Pleading, well suggests: ''So far as the plaintiff's theory of his case means the legal position taken by his counsel—and this is gen-

erally its meaning,—it would seem clear that this is not a part of the complaint." Clark on Code Pleading, § 43. We understand that the purpose of the defendant's motion was not to secure information in regard to some fact unfairly withheld from the defendant by the plaintiff; but, to ascertain, whether the plaintiff would contend that the facts of which both parties were equally cognizant, fixed the plaintiff's status as an employee, or an independent contractor. The motion was properly disposed of.

We shall next address ourselves to the problem whether the plaintiff was an employee, or an independent contractor. He testified that for "a little better than four years" he had been engaged in the business of "hauling garbage." In conducting this business he used a motor truck, of which he was the owner; the license was in his name. In describing his arrangement with the defendant he said, "We had an agreement that he was paying me $8 a month to stop at his place of business three times a week to haul any of his rubbish." This arrangement had existed for two years and four months. In addition to taking care of the refuse of the defendant he served approximately 150 other customers. The business was conducted by himself and a partner who shared equally the profits. The income from the garbage business was between $275 and $300 per month; they derived some extra revenue by performing work for contractors, and thus the plaintiff's net income was about $200 a month. Further, he testified, that upon visiting the defendant's establishment he did not have to first speak to some one before collecting the refuse, but, "I just went there to get it and pick it up and go." The rubbish was disposed of in accordance with the city's directions; some

kinds were deposited at one dumping place, while others he hauled to different locations. Apparently the defendant was neither interested in, nor consulted in regard to these matters; his sole concern was to have the garbage removed from his premises for the agreed consideration. Following this accident the partnership was dissolved, and the plaintiff took into his employ a helper. Upon the twenty-eighth day of January, 1925, he, his partner, and the truck called at the defendant's place of business for the purpose of removing the waste materials. While the partner performed one portion of the task, the plaintiff went to the second story of the building upon the freight elevator to obtain the rubbish that was there. Here he took hold of a discarded packing case lying six feet from the elevator shaft, and walking backward dragged it after him towards the elevator. Since he had left the latter only a moment or two ago, he assumed, without looking, that it was still there; however, the elevator was upon its way to an upper story. Dragging the empty case after him, the plaintiff backed to the shaft and his steps carried him over the unguarded edge.

The foregoing constitutes a summary of those facts which are material to the inquiry whether the plaintiff was an employee or an independent contractor. There exists no controversy in regard to them. The general principles of law applicable to such problems have been many times enunciated by the courts; in fact, the many decisions disposing of similar controversies afford us an abundance of simple, well-stated rules which can be readily applied. In 31 C. J., page 474, in the footnote, the editor quotes from a large number of judicial definitions of the term independent contractor. At page 473 of the

same volume, in the text, will be found a comprehensive definition. In *Scales* v. *First State Bank,* 88 Or. 490 (472 Pac. 499), this court quoted with approval the definition of Mr. Justice Lurton in *Powell* v. *Virginia Construction Co.,* 88 Tenn. 692 (13 S. W. 691, 17 Am. St. Rep. 925), that: "An independent contractor is one who, exercising an independent employment, contracts to do a piece of work according to his own methods, and without being subject to control of his employer, except as to the result of his work," and added:

"While it is not always easy to frame a definition which accurately states essential elements and at the same time is capable of being applied to all cases, the one just given has the merit of being concise and also has the prestige that follows from frequent judicial approval: *Pottorff* v. *Fidelity Coal Mining Co.,* 86 Kan. 774 (122 Pac. 120); *Humpton* v. *Unterkircher,* 97 Iowa, 509 (66 N. W. 776); *Good* v. *Johnson,* 38 Colo. 440 (88 Pac. 439, 8 L. R. A. (N. S.) 896). Stated broadly, the test for determining whether a person employed to do certain work is or is not an independent contractor, is the control which the employer reserves over the work and has the right to exercise. Where the person doing the work is an independent contractor the will of the employer is represented in the result contracted for while the general control over means and methods is given to the contractor."

In *Landberg* v. *State Industrial Acc. Com.,* 107 Or. 498 (215 Pac. 594), this court again determined the status of one whom it was alleged was an employee; the decision quotes from a number of general definitions which specify the attributes of an employee and of an independent contractor. In the case before us it will be observed that the plaintiff's compensation did not depend upon the quantity of garbage moved

day by day, but that he undertook his task for a specific amount, whether much or little was to be done upon any particular occasion, and likewise, we assume from the evidence that the length of the haul must have varied from time to time, yet this circumstance also caused no change in the compensation. His undertaking was not for a personal service, but covered the engagement of his partner, and the use of his garbage truck. The defendant apparently was not interested in the plaintiff's actions before and after he left the defendant's premises; his interest was solely in the result, that his building should be rid of the accumulated rubbish. The plaintiff, subject to the supervision of the city, determined where the refuse should be deposited. No one of these facts is in itself controlling. But the combination of them, together with the circumstance that the plaintiff served 150 other customers, satisfies us that the plaintiff was an independent contractor.

We come now to the problem whether Section 6785, Or. L., which is a portion of the statute commonly referred to as the Employer's Liability Act, includes one who is an independent contractor. If employees only are protected by the requirements of the act, the plaintiff cannot recover; but, if an independent contractor, whose duties require their performance in an elevator shaft, or in the presence of an instrumentality which creates a risk, or danger, is also embraced within the protective features of the act, the plaintiff was possessed of a cause of action by virtue of it, if the requirements of the act were breached by the defendant.

■ It is well established that the plaintiff could not recover under the act by virtue of his status as a member of the public: *Turnidge* v. *Thompson*,

89 Or. 637 (175 Pac. 281); *Malloy* v. *Marshall Wells Hardware Co.*, 90 Or. 303 (173 Pac. 267, 175 Pac. 659, 176 Pac. 589); *Saylor* v. *Enterprise Electric Co.*, 106 Or. 421 (212 Pac. 477); *Brady* v. *Oregon Lumber Co.*, 117 Or. 188 (243 Pac. 96, 45 A. L. R. 812).

We revert to the problem whether the foregoing circumstances accompanying his condition as an independent contractor place him in a more favorable situation. In *Warner* v. *Synnes*, 114 Or. 451 (230 Pac. 362, 235 Pac. 305, 44 A. L. R. 904), the plaintiff was the employee of an independent contractor; thus his situation begins to approach that of our plaintiff. He also was employed in a place attended with risk and danger; in fact one that is enumerated in the act, for he was working upon a scaffolding. He, like our plaintiff, fell, and was injured. The action was brought, not against the employer, but against the party with whom his employer had contracted. This court found that the latter was an independent contractor, and that the defendant had no interest in the means and methods selected for bringing about the result which the employer had contracted to produce. Mr. Justice BURNETT, in announcing the decision that the defendant was not liable, said:

"It is well settled in this jurisdiction that where the work is in charge of a contractor and the party with whom he contracts is concerned only in the general result of the work and has no control of the details and manner in which the work shall be accomplished the contractor alone is responsible to the person in his employ who is injured during the progress of the work. The language of the Employer's Liability Law is that 'Generally, all owners, contractors, or subcontractors, and other person having charge of, or responsible for any work involving

a risk or danger to the employees or the public,' shall use care and precaution for the protection and safety of life and limb. The reason for making the contractor alone responsible and exonerating the owner with whom he contracts is that the owner is not the person in charge of the work and so is not responsible for the injury complained of."

The only material distinction between the facts of that case and those of the present is the circumstance that in the one the plaintiff was the employee of the independent contractor, while in the present he is the independent contractor himself.

In *Saylor* v. *Enterprise Electric Co.*, 106 Or. 421 (212 Pac. 477), this distinction disappears, for now the plaintiff is the individual engaged in the prosecution of the work. Briefly stated, the facts in that case are: the deceased was killed by a charge of electricity when a hay derrick which he was moving from one ranch to another came into contact with an uninsulated, high-powered transmission line maintained by the defendant. He was not working for any other person; apparently he was the owner of the derrick, and was moving it, so that it might be employed in harvesting a crop upon another ranch after he had completed similar work upon the preceding ranch. He had just succeeded in getting the derrick upon the county road when its upper part came into contact with the wire. In that case the contention was advanced that the act "was intended to protect any member of the public who might be working or engaged in any work upon or about electric wires carrying a high and dangerous voltage." In our present case a similar contention is advanced, except the plaintiff omits the element of the electrical wires and substitutes the elevator

shaft. This contention was rejected and recovery denied to the plaintiff. In announcing this result Mr. Justice HARRIS presented an examination of the argument submitted in the Voter's Pamphlet at the time when the act was before the public for a vote. He also analyzed the title of the act and thus showed that the relationship of employer and employee was emphasized both in the title and in the argument. After pointing out that "the decedent was not an employee of any employer," he concluded:

"The whole history of the preparation, submission and adoption of the act and the language employed in the title and in the body of the statute makes it plain that it is designed to protect employees, and to give them, or their substitutes, and only to them the right to prosecute under it an action for damages whenever injury or death results from a violation of it."

The plaintiff, however, relies upon the following language found in *Rorvik* v. *North Pac. Lumber Co.,* 99 Or. 58 (190 Pac. 331, 195 Pac. 163):

"In view of the able and exhaustive analysis of our Employer's Liability Act by Mr. Justice HARRIS, in *Turnidge* v. *Thompson,* 89 Or. 637 (175 Pac. 281), which covers every phase of the question as to the persons who are within or without the act, we deem any attempt at further analysis or distinction unnecessary. From the lucid interpretation in that case and in other cases hereafter mentioned, we deduce the rule that the Employers' Liability Act does not extend to the protection of the general public as such, but that it does extend its protection to employees of the particular person owning or operating dangerous machinery or engaged in hazardous employments, and to other persons or employees of other corporations whose lawful duties require them to be or work about such machinery, or expose them-

selves to the hazards of the machinery or appliances in use by the owner thereof.''

In that case the deceased was the captain of a vessel which was taking on cargo at the wharves of the defendant. The employees of the defendant were engaged in the act of bringing lumber alongside the vessel at the wharf; at the same time the employees of the vessel were engaged in the act of placing this lumber aboard the vessel. Thus the two groups were upon the wharf at the same time, occupied in their respective employments. The decision points out ''the two sets of employees in their work intermingled.'' It was necessary for the deceased in the discharge of his duty to his employer, to be in the midst of this work. While so engaged a negligent act of the defendant caused his death. It was held that his widow was entitled to maintain an action under the act, because the deceased was an employee, whose duties required their performance at a place of danger. The distinction between that case and the present lies in the fact that in the one the injured party was an employee, while in the present he is not. A later case to similar effect is *Walters* v. *Dock Commission* (Or.), 270 Pac. 778. Counsel for plaintiff submits that one who has achieved the office of captain of a vessel is upon a higher industrial and economic level than another whose task is the humble one of gathering rubbish. Our duty, however, is confined to the function of interpretation. If we are correct in our understanding that the purpose of the act was to protect only employees, counsel's argument loses its force when addressed to our ears. Our past decisions in expounding the meaning of the act make repeated use of the words employer and employee, and recovery

has been uniformly confined to the latter. In *Clayton* v. *Enterprise Electric Co.*, 82 Or. 149 (161 Pac. 411), the deceased was an employee; the decision, however, contains words that might make it seem recovery was upon a different basis. A recent case restricting the operation of the act to the employee class is *Brady* v. *Oregon Lumber Co.*, 117 Or. 188 (243 Pac. 96, 45 A. L. R. 812).

Since the plaintiff was not an employee, but was an independent contractor, we conclude that he could not maintain this action as a beneficiary under the act. But we do not believe that the court erred when it denied the motions for a nonsuit and for a directed verdict. The complaint was sufficient to state a cause of action for a violation of the common-law duty as well as of the statutory one. When the proof failed to reveal the plaintiff as one who was entitled to the remedies provided by the Employers' Liability Act his complaint still submitted the problem whether the defendant had performed its common-law duty. The evidence shows that the shaft was inclosed on three sides, but the fourth, which constituted the approach to the elevator, was guarded by a gate. The construction of this gate was such that it should close automatically when the elevator left the floor. The plaintiff testified that the gate failed to operate upon this occasion, and that although the elevator had ascended, the shaft remained open. It is a fact, demonstrated by the accident, that upon the occasions in question the elevator had ascended sufficiently to permit the plaintiff to fall into the shaft, and yet the gate had not descended sufficiently to exclude him. The plaintiff was not a trespasser, nor a mere licensee; the defendant owed him a duty to use ordinary care to

have its premises in order: 9 R. C. L., Elevators, § 22. The defendant contends that the evidence conclusively establishes that the plaintiff was guilty of contributory negligence. The evidence is to the effect that he had shoved from the elevator a large box and had put it into its proper place; he then started toward the elevator with the old packing case. His movements were backward because he was dragging this object; the distance, however, was only about six feet. An employee of the defendant, with whom the plaintiff was acquainted, had handed him this discarded case. He continued upon his course backward, without looking to see whether the elevator was at the floor level, and was surprised to find that his last step carried him over the edge and into an unguarded, empty shaft. While we cannot commend his action as an illustration of the care to be exercised by those who are about to enter an elevator, yet we are not prepared to say that it warrants only the conclusion that he failed to exercise due care. Reasonable men might differ as to the hazards of such an act. The plaintiff may have assumed that the gate would exclude him from the shaft if the elevator was no longer there. Only a moment or two had elapsed since he stepped off of the elevator. The act of the defendant's employee, an acquaintance of his, in handing him this case for deposit upon the elevator, may have induced the thought that the elevator was there to receive it. These, and other similar circumstances, require that the question of his alleged negligence should be submitted as a question of fact to the jury. We have read *Massey* v. *Seller*, 45 Or. 267 (77 Pac. 397), and *De Honey* v. *Harding*, 300 Fed. 698, relied upon by the defendant;

the facts of those cases are materially different than those presented by the plaintiff to us.

The other errors which the defendant contends were committed we do not believe will occur upon the retrial; hence we shall not take occasion to discuss them.                    REVERSED AND REMANDED.

RAND, C. J., and BEAN and McBRIDE, JJ., concur.