Argued November 25, 1958, affirmed April 29, 1959

# WELTER, ADMTX *v.* M & M WOODWORKING CO.

### 338 P. 2d 651

*Geo. A. Rhoten,* Salem, argued the cause for appellant. With him on the brief were Rhoten, Rhoten & Speerstra, Salem, and Philip A. Levin, Portland.

*George H. Fraser,* Portland, argued the cause for respondent. With him on the brief were Hart, Spencer, McCulloch, Rockwood and Davies and Nathan J. Heath, Portland, and Jos. M. Devers, Salem.

Before PERRY, Chief Justice,* and LUSK, WARNER and SLOAN, Justices.

LUSK, J.

This is an appeal from a judgment for the plaintiff in an action to recover damages for death by wrongful act.

The decedent, Earl P. Welter, was a member of a partnership doing business under the name of Fern Ridge Logging Company which had entered into a "Re-Logging Agreement" with the defendant, M & M Woodworking Company, an Oregon corporation, to fell, buck, yard and load certain standing timber in Linn County, Oregon, which M & M was purchasing under a contract of sale with the State of Oregon Board of Forestry, and transport the logs to log ponds near Albany, Oregon. This contract was executed by the Scordrite Company, a subsidiary of M & M, for and on behalf of the latter, and was subsequently assigned by the Scordrite Company to M & M. The contract required the purchaser to complete the construction of a road in the timber, designated as Road

---

* Chief Justice when case was argued.

No. 1, in accordance with the specifications therein stipulated. This work was done by a sub-contractor under an agreement with the Scordrite Company. It is conceded that the latter was acting as agent for M & M. Fern Ridge's contract with M & M gave the former a non-exclusive right to use M & M's roads in the area. In consideration of such right Fern Ridge agreed to pay to M & M "the same proportion of the total cost of maintaining such road as the quantity of logs transported over such road by * * * [Fern Ridge] during any given period of time bears to the quantity of all logs thus transported."

Earl P. Welter met his death incidentally to the performance of the re-logging contract, on November 17, 1953, when he was operating a vehicle known as a Skagit SJ-8 Mobile Logger (hereinafter for convenience referred to as the "Logger") over Road No. 1. The plaintiff claims that, due to the negligence of the defendant in the construction of the road, it gave way under the weight of the machine, which rolled over on its side and down a steep embankment and pinned Welter beneath it. The specific charges of negligence (aside from several which were withdrawn by the court) are that the defendant failed:

"1. * * * to provide said roadway with a sufficiently wide base for new fill material considering the circumstances and the type of road material used to form and be said roadway;

"2. * * * to use proper types of rock and fill materials used to form and be said roadway;

"3. * * * to construct drainage fields or culverts or any other drainage device.

"4. * * * to make a proper, usual or any inspection of said roadway."

At the conclusion of the testimony, the defendant moved for a directed verdict on the ground that there

was no proof of negligence which proximately caused the death of the decedent, and further moved separately that each of the charges of negligence above set out be withdrawn from the consideration of the jury. Adverse rulings on these motions are the subjects of the first five assignments of error.

These assignments, which will be considered together, call for a statement of the evidence and the applicable rule of law.

The Logger is a self-propelled piece of equipment used in yarding and loading logs. It weighed 63,000 pounds and measured 8 feet 9 inches in width between the tires. It was operated from a cab in the rear. At the time of the accident, the work of the partnership under their contract with the defendant had been completed and the decedent was moving the Logger out of the woods to take it to the town of Stayton, Oregon. The accident occurred in a fill area. At the narrowest point, the top of the road in this area was between 12 and 13 feet in width. Frank Welter, a brother of the decedent and an employee of the partnership, was an eye-witness to the accident. Immediately before, he had assisted the decedent in removing the boom from the Logger and loading it on a truck. He remained behind while the Logger proceeded down the road and saw the accident from a distance of about 150 to 200 feet. He described what he saw in this language.

"Well, the thing was driving down the road ahead of me and I noticed that his wheel was, on the left, was pulled over a little but the other wheel was in the main travel track, the right-hand wheel, and then it stopped, and as it stopped, why, it settled down and just then, why, he turned back and looked back at me and just as much as to say we are stuck, we are going to have to get this thing

pulled out, and about that time the whole thing just give way and over it went."

The rear of the Logger was equipped with dual wheels. The witness testified that the right hand wheels were in the well-traveled track on that side and the left hand wheels about 12 inches "over the edge" of the track on the left hand side, that the inner dual was in the track but the outer was not. There was evidence that after the accident at the point where it occurred an area in the road about four feet long was depressed about 18 inches.

The evidence as to the construction of the road may be summarized as follows:

At the point of the accident the road was super-imposed on an old railroad right-of-way and, as stated, this was a fill area. The top of the railroad grade, referred to as the sub-grade, prior to surfacing was 14 to 15 feet in width. On top of the railroad grade was placed as surfacing what is referred to as "pit-run" material approximately 12 to 18 inches in depth, making a road 12 to 13 feet wide. The expression "pit-run material" was explained as meaning an alluvial deposit or glacial till, consisting of round river rocks up to 12 inches or more in diameter and sand, gravel and silt. Such material is inferior to other types of road material in respect of its cohesive qualities. The same material was used on the embankment and, while it is commonly so used, it was not a suitable material at the particular site because of other factors, mainly the presence of water and the degree of the slope. The base of the road was not wide enough considering the type of material used, the degree of slope of the bank, and the drainage facilities, to support a surface at the top 12 to 13 feet in width.

There was evidence that, owing to the conditions

on the East side of the fill, water percolated through the embankment with resulting impairment of the strength and stability of the road. To the East of the road was a hill which sloped from East to West and an active spring, the waters of which were discharged in the direction of the fill. Surface waters drained down the hillside in the same direction. A culvert had been placed through the road to carry off the flow of the spring. On the North side of the culvert there was a dike, or dam, which retained the water from the spring and channeled it through the culvert, and just beyond the dike to the North, and exactly opposite the point of the accident, was a "borrow pit" or depression. Surface waters drained into the depression and were collected there. Because the depression was below the flowline of the culvert and because of the dike between the culvert and the depression, these waters could not drain through the culvert, and, having no other way of escape, found their way into the embankment and percolated through it. An expert witness for the plaintiff testified that the facilities for handling the flow of the water were totally inadequate, and that a culvert should have been installed at the point to take care of it.

As to the allegation that the defendant failed to inspect the road, it appears from the testimony of Donald Sheythe that he had complete charge of the road as representative of M & M, subject to his superiors. William Gray, District Manager, had supervision of the road with respect to maintenance and inspection. Sheythe was asked whether Gray ever delegated inspection and maintenance problems to him, and answered, "Not definitely. There wasn't any problem to delegate." In response to the question whether he ever had occasion to inspect the area where the

accident occurred prior to its occurrence, he said that he had been over the fill area a number of times on foot, but that he had never gone down the bank on the East side to see whether there "was any expanding water after rain" there, and that "one could see from the roadway." There was other testimony, however, which indicated that the condition described with respect to water accumulating at the foot of the East embankment and entering the embankment and percolating through it could not be ascertained without going down the embankment and observing it on both sides.

While not conceding that the evidence would be in any circumstances· sufficient to make a *prima facie* case of negligence, the main reliance of the defendant is on the proposition that the road was constructed in full and exact compliance with the defendant's contract with the state, and, therefore, that the defendant violated no duty it owed to the decedent.

The contention is thus stated in defendant's brief:

"A contractor is not guilty of negligence in following the plans and specifications for the work unless they are so obviously defective as to put a reasonable contractor upon notice of the danger inherent in proceeding in accordance with them."

A number of cases are cited in support of the foregoing proposition. In some it appeared that the work had been accepted and turned over to the owner. *Thornton v. Dow,* 60 Wash 622, 111 P 899; *Ryan v. Feeney & Sheehan Building Co.,* 239 NY 43, 145 NE 321, 41 ALR 1. In such circumstances, the contractor is not held liable for injury to a third party due to some defect in the work, even though he was negligent in carrying out the contract (65 CJS 613, Negligence

§ 95b), because his right to exercise control over the work and his duty to correct defects have ceased and his negligence is not considered the proximate cause of the injury, but rather the negligence of the owner, upon whom has devolved the duty to make the work safe. *Smith v. Claude Neon Lights, Inc.*, 110 NJL 326, 164 A 423; *Casey v. Bridge Co.*, 114 MoApp 47, 89 SW 330; *Canal Construction Co. v. Clem*, 163 Ark 416, 260 SW 442, 41 ALR 4, Anno. p 8, 15.

■ But this is not a case in which the owner has resumed possession and control of the premises where the work was done; nor one in which the plaintiff bases her claim of liability upon the failure of the defendant to build the road in compliance with its contract with the state. The plaintiff has simply asserted a violation by the defendant of its common law duty toward an invitee. The "duty or liability arises independent of the contract." *Marvin Safe Co. v. Ward*, 46 NJL 19, 25. Upon such a question, the specifications of the contract do not determine the standard of care; proof of compliance with the specifications by the defendant is not of itself a defense nor, on the other hand, would proof of their violation without more make a case for the plaintiff. *Boyd v. Mahone*, 142 Va 690, 128 SE 259; *Hansen v. Clyde*, 89 Utah 31, 56 P2d 1366, 104 ALR 943; *Lewis v. LaNier*, 84 Colo 376, 270 P 656; *Cleveland v. Street Ry.*, 86 Me 232, 29 A 1005; *Houston City St. Ry. Co. v. Richart*, Tex Civ App, 27 SW 920.

■ In his relationship with the defendant, decedent was an independent contractor. He was also an invitee, for an independent contractor who comes on premises owned or occupied by the defendant in order to perform duties under the contract with the defendant has that status. *Short v. DRB Logging Company*, 192 Or

383, 394, 232 P2d 70, 235 P2d 340; *Helzer v. Wax,* 127 Or 427, 438, 272 P 556; *Indermauer v. Dames,* 1 CP 274, affirmed, 2 CP 311 (1867); Restatement of Torts, § 332. Referring to *Indermauer v. Dames,* it is said in Prosser, Selected Topics on the Law of Torts 291, "Since this decision, independent contractors and their servants doing work on the occupied premises have been held without dissent to be invitees  *  *  *." See, also, Prosser on Torts (2d ed) 452.

■ Here, the invitation, under the express terms of the contract between Fern Ridge and the defendant, extended to the use by the decedent of the road on which the accident occurred, and impliedly to the use thereon of the mobile logger, about which the defendant knew. The law of negligence requires a property owner to maintain his property in a reasonably safe condition for the reception of those whom he invites upon it, and the ordinary tests promulgated by the law of negligence determine whether the property owner has exercised due care to assure the safety of his invitees during the course of their visit. *Wheeler v. City of St. Helens,* 153 Or 610, 616, 58 P2d 501. In *Briggs v. John Yeon Co., Inc.,* 168 Or 239, 252, 122 P2d 444, we said: "Since there was evidence warranting a finding that the plaintiff was an invitee, the defendant owed her the duty to exercise reasonable care not to create and permit to remain an unsafe condition" on the premises of the defendant. See, also, *Helzer v. Wax,* supra; *Hise v. City of North Bend,* 138 Or 150, 163, 6 P2d 30; *Lange v. St. Johns Lumber Co.,* 115 Or 337, 343, 237 P 696. And, since the defendant itself built the road, it would be chargeable with knowledge of any dangerous condition there existing. *Saunders v. Williams & Co.,* 155 Or 1, 11, 62 P2d 260.

■ Measured by these well-established rules, we

think that the evidence was sufficient to warrant submission to the jury of the four charges of negligence under consideration. Factors which enter into the question of the proper construction of a road in a fill area are shown to be the width of the road at the top in relation to that at the base, the degree of slope of the embankments, the cohesiveness of the materials used in the embankments, and proper drainage. Evidence of engineers skilled in the art of road building was received which tended to show that a combination of too narrow a base with consequent excessive steepness in the degree of slope of the embankments, the use of inferior materials, and inadequate provision for drainage, permitting water to run through the fill, created a condition which probably caused the road to sink under the weight of the Logger. From all the facts, the jury could have found that the defendant was negligent in not furnishing a reasonably safe road for its invitee to use in performing work called for by the re-logging agreement.

An occupier of land "must not only warn the visitor of dangers of which he knows, but must also inspect the premises to discover possible defects." Prosser on Torts (2d ed) 459; Restatement of Torts, § 343, Comment a.

The jury could have found from the evidence the existence of a condition which threatened the security of the road and the safety of the decedent, that a reasonable inspection would have discovered the defect, and that the defendant failed in its duty in this regard.

We conclude that there was no error in denying the motion for a directed verdict and the several motions to withdraw charges of negligence in the complaint.

■ The defendant argues, in effect, that this is too

harsh a rule to apply in the circumstances of this case. It calls attention to the great weight of the mobile logger—over thirty tons, that the road was completed more than two years before the fatal accident and in the meantime ten million board feet of logs had been hauled over it, and that on the day before the accident two inches of rain had fallen. These are certainly all pertinent considerations upon the question of whether the road was negligently constructed. But, we cannot say that they conclusively overcome the evidence produced by the plaintiff without passing on a question of fact. The road was built to be used in all kinds of weather. It was being used by the decedent during the month of November (when, as we judicially know, heavy rainfall is to be expected in Linn County, Oregon), with the knowledge of the defendant and at its express invitation. The fact that the road had stood up under the use to which it had been put until the day it sank beneath the weight of the Logger, carrying Earl P. Welter to his death, might be persuasive with a juror, but it is no more than an item of evidence tending to refute the charges of negligence.

We neither express nor intimate any opinion of our own about the weight or effect of the evidence. That was for the jury and we think was properly submitted to the jury.

Error is assigned to an instruction which submitted to the jury the question of the measure of care to be exercised by a person in the construction of a road. The instruction embodied the duty to exercise reasonable care and skill considering the nature of the work and the uses to which it is to be put.

One objection to the instruction is based partly upon the same reasons advanced in support of the motion for directed verdict, and need not be further

considered. Whether the road was properly constructed was relevant to the question whether the defendant provided a safe road for the use of its invitee. It is further suggested that plaintiff, by consenting to withdrawal of other specifications of negligence in the complaint, had in effect withdrawn the charges as to negligent construction. We think that the suggestion is without merit.

■■ Six assignments of error are based upon exceptions to the court's overruling of defendant's objections to the testimony of witnesses who qualified, by training and experience, as persons versed in the art of road building. The objection was not to their qualifications as experts, but to the admission of that character of testimony, on the premise that it "invaded the province of the jury." We have already indicated the nature of the testimony given by these witnesses, and deem it unnecessary to state it in any further detail, for the question raised by all these assignments of error is simply whether or not the subject of the proper construction of a logging road is one concerning which an average layman is sufficiently well informed that his judgment concerning it may not be aided by the opinions of experts. In *Evarts v. Fischer,* 75 Or 316, 326, 145 P 33, 147 P 189, we approved the following statement of the rule as enunciated in *Muldowney v. Illinois Central Ry. Co.,* 36 Iowa 462, 473:

"The opinion of witnesses possessing peculiar skill is admissible whenever the subject matter of inquiry is such that inexperienced persons are unlikely to prove capable of forming a correct judgment upon it, without such assistance; in other words, when it so far partakes of the nature of a science as to require a course of previous habit or study, in order to the attainment of a knowledge of it; * * *."

See, also, *Schweiger v. Solbeck,* 191 Or 454, 472-473, 230 P2d 195, 29 ALR2d 435; *Stonebrink v. Highland Motors, Inc.,* 171 Or 415, 427, 137 P2d 986; *Scott v. Astoria Railroad Co.,* 43 Or 26, 36, 72 P 594, 99 Am StRep 710, 62 LRA 543. We have approved the rule that an expert witness may express an opinion upon the very issue before the jury, and that it is impossible for his testimony in that connection to usurp the jury's function. *Schweiger v. Solbeck,* supra; *Goldfoot v. Lofgren,* 135 Or 533, 541, 296 P 843. We think it self-evident that the building of a road on a fill to be used by log trucks and other heavy equipment is an art or a science, and that it was therefore proper for the court to admit the testimony of experts to aid the jury in resolving the question whether the road here in controversy was built with the requisite degree of care and skill.

■ Belatedly, by motion for judgment notwithstanding the verdict, the defendant urged that the complaint does not state a cause of action. In view of the tardiness of the challenge, every reasonable intendment should be indulged in favor of the sufficiency of the pleading. Attached to the complaint was a copy of the re-logging agreement between Fern Ridge (therein referred to as the Loggers) and the defendant, which contains the following provision:

"9. The Loggers shall indemnify and protect the Company and logs cut or hauled by the Loggers against all claims and demands for labor, materials, or supplies furnished to or for the Loggers and against all other claims, liens and demands that may be incurred by the Loggers or anyone claiming under them in the prosecution of their operations.  *  *  *"

This provision was followed by others requiring Fern Ridge to be under the Workmen's Compensation Law and to carry liability insurance in which Fern Ridge and the defendant should be the insured.

■ It is the defendant's contention that the provision quoted amounts to an agreement on the part of Fern Ridge to indemnify the defendant against the claim of the plaintiff in this case, and, therefore, against its own negligence. We can not agree. The first clause of the sentence is concerned with claims and demands for labor, materials and supplies furnished to Fern Ridge; the second clause (upon which reliance is placed by the defendant) covers claims, liens and demands that "may be incurred" *by Fern Ridge* or any one claiming under them. "Incur" means "to become liable for". See cases cited in 20 Words and Phrases (perm ed) 623-624. It is claims, liens and demands for which Fern Ridge may become liable to which the agreement refers. We assume that the parties had in mind when this provision was inserted the possibility that a claim might be asserted against the defendant based on the theory that Fern Ridge was its agent in performing work under the contract. Whether this be correct or not, it is entirely clear that this case is not concerned with a claim, lien or demand incurred by Fern Ridge, but rather with a claim *asserted* by the personal representative of a member of the Fern Ridge partnership against the defendant. No liability of Fern Ridge is in any way involved, and hence the provision of the contract in question can not be construed so as to protect the defendant from liability in this case.

We find no error in the record, and the judgment is affirmed.