Argued and submitted March 5, question answered in the negative June 9, 1987

GROVES et al,
*Plaintiffs,*

*v.*

## MAX J. KUNEY COMPANY,
*Defendant.*

(USDC Civil 85-1980; SC S33568)

737 P2d 1240

W. Eugene Hallman, Pendleton, argued the cause for plaintiffs. With him on the brief was Mautz, Hallman & DeVore, Pendleton.

Roger K. Stroup, Portland, argued the cause for defendant. With him on the brief was Bodyfelt, Mount, Stroup & Chamberlain, Portland.

CARSON, J.

Lent, J., concurred and filed an opinion.

## CARSON, J.

This case is before this court on certification from the United States District Court for the District of Oregon, pursuant to ORS 28.200.[1] Plaintiffs brought the underlying diversity action in federal district court seeking damages for the death of the decedent, Vonnie Thomas Groves. One of three separate claims for relief was a wrongful death claim maintained pursuant to ORS 654.325, a part of Oregon's Employers' Liability Act (ELA).

The federal district court certified the following facts:

"This question arises from an incident which occurred in August, 1985. Both parties agree that plaintiff's decedent, Vonnie Thomas Groves, was an independent contractor. At the time of the accident Mr. Groves was pumping cement from his truck to the job site. The job site was the construction of a highway bridge over the Umatilla River in Umatilla County, Oregon. Defendant, Max J. Kuney Company, was the general contractor responsible for the construction of the bridge and who contracted with Mr. Groves. Mr. Groves fell from the construction site and suffered injuries which resulted in his death. Plaintiffs assert a number of claims. The claim relevant to this question is that defendant violated O.R.S. 654.310 by failing to provide a safe place for Mr. Groves to work and is, therefore, liable to the plaintiffs under O.R.S. 654.310."

Plaintiffs moved for partial summary judgment based upon defendant's alleged violations of ORS 654.310 and related safety regulations. The federal district court, on its own motion, certified the following question of Oregon law to this court:

"Is an independent contractor covered by the provisions of

---

[1] ORS 28.200 provides:

"The Supreme Court may answer questions of law certified to it by the Supreme Court of the United States, a Court of Appeals of the United States, a United States District Court or the highest appellate court or the intermediate appellate court of any other state, when requested by the certifying court if there are involved in any proceedings before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court and the intermediate appellate courts of this state."

*See generally* ORS 28.200 to 28.230.

O.R.S. 654.310 while working under contract with the defendant who was in charge of building a bridge?"

The answer is no. To be covered by the ELA, a worker must be an employee. Therefore, an independent contractor, who is not the employee of another, cannot recover under the provisions of the Oregon ELA.

## THE STATUTES

ORS 654.305 provides:

"Generally, all owners, contractors or subcontractors and other persons having charge of, or responsible for, any work involving a risk or danger to the employes or the public, shall use every device, care and precaution which it is practicable to use for the protection and safety of life and limb, limited only by the necessity for preserving the efficiency of the structure, machine or other apparatus or device, and without regard to the additional cost of suitable material or safety appliance and devices."

ORS 654.310 provides:

"All owners, contractors, subcontractors, or persons whatsoever, engaged in the construction, repairing, alteration, removal or painting of any building, bridge, viaduct or other structure, or in the erection or operation of any machinery, or in the manufacture, transmission and use of electricity, or in the manufacture or use of any dangerous appliance or substance, shall see that all places of employment are in compliance with every applicable order, decision, direction, standard, rule or regulation made or prescribed by the Workers' Compensation Department pursuant to ORS 654.001 to 654.295."

Plaintiffs acknowledge that ORS 654.305 focuses on employees (a status or relationship), but plaintiffs base their quest for recovery upon ORS 654.310. Plaintiffs contend that ORS 654.310 is applicable to certain dangerous *places* of employment, unconnected to employment status. Therefore, because the job site where the decedent was killed was covered, plaintiffs claim a right to recovery. To determine the scope and coverage of ORS 654.310, we must review the development of the ELA.

Oregon's ELA originally was proposed by initiative and adopted in 1910. Or Laws 1911, ch 3; *Sacher v. Bohemia, Inc.,* 302 Or 477, 481, 731 P2d 434 (1987); *Saylor v. Enterprise*

*Electric Co.,* 106 Or 421, 425, 212 P 477 (1923). Its purpose was to impose higher standards of care than did the common law on employers whose work involved "risk or danger." *Howard v. Foster & Kleister,* 217 Or 516, 533, 332 P2d 621 (1958).

ORS 654.310, with which we here are concerned, and ORS 654.305, together formed section 1 of the original act.[2] Cases decided under the original section 1 held that the ELA did not apply to members of the general public who were not engaged in work. *See, e.g., Turnidge v. Thompson,* 89 Or 637, 175 P 281 (1918).

In *Saylor v. Enterprise Electric Co., supra,* the decedent was not employed or "working for any other person"

---

[2] Oregon Laws 1911, chapter 3, section 1 provided:

"All owners, contractors, subcontractors, corporations or persons whatsoever, engaged in the construction, repairing, alteration, removal or painting of any building, bridge, viaduct, or other structure, or in the erection or operation of any machinery, or in the manufacture, transmission and use of electricity, or in the manufacture or use of any dangerous appliance or substance, shall see that all metal, wood, rope, glass, rubber, gutta percha, or other material whatever, shall be carefully selected and inspected and tested so as to detect any defects, and all scaffolding, staging, false work or other temporary structure shall be constructed to bear four times the maximum weight to be sustained by said structure, and such structure shall not at any time be overloaded or overcrowded; and all scaffolding, staging or other structures more than twenty feet from the ground or floor shall be secured from swaying and provided with a strong and efficient safety rail or other contrivance, so as to prevent any person from falling therefrom, and all dangerous machinery shall be securely covered and protected to the fullest extent that the proper operation of the machinery permits, and all shafts, wells, floor openings and similar places of danger shall be enclosed, and all machinery other than that operated by hand power shall, whenever necessary for the safety of persons employed in or about the same, or for the safety of the general public, be provided with a system of communication by means of signals, so that at all times there may be prompt and efficient communication between the employees or other persons and the operator of the motive power, and in the transmission and use of electricity of a dangerous voltage full and complete insulation shall be provided at all points where the public or the employees of the owner, contractor or subcontractor transmitting or using said electricity are liable to come in contact with the wire, and dead wires shall not be mingled with live wires, nor strung upon the same support, and the arms or supports bearing live wires shall be especially designated by a color or other designation which is instantly apparent and live electrical wires carrying a dangerous voltage shall be strung at such distance from the poles or supports as to permit repairmen to freely engage in their work without danger of shock; and generally, all owners, contractors or subcontractors and other persons having charge of, or responsible for, any work involving a risk or danger to the employees or the public, shall use every device, care and precaution which it is practicable to use for the protection and safety of life and limb, limited only by the necessity for preserving the efficiency of the structure, machine or other apparatus or device, and without regard to the additional cost of suitable material or safety appliance and devices."

when the hay derrick he was moving from one ranch to another came into contact with a high voltage power line, causing his death. The plaintiff, the decedent's wife, contended that the decedent was a workman and, as such, was protected by the ELA. This court stated that:

> "* * * There is ample room for saying that 'actions by employees against employers' means by employees and, in case of death, their substitutes specified in the statute; but there is no room whatever for saying that the word 'employees' includes one who, though engaged in work, was not an employee of any person. * * *" 106 Or at 439.

In reaching this conclusion, the court looked at the history and purpose of the ELA. In determining the purpose of the ELA, the court stated:

> "When the voters read the argument in the voters' pamphlet they could have received no other impression than that the bill was designed to protect employees. The context plainly indicates that the words 'workmen,' and 'laborers,' and the like, refer to those who work for others. Employers' liability is the theme for discussion. The relation of employer and employee is the relation expressly mentioned. The propriety of enlarging the duties of the employer and the right of the employee is vigorously emphasized. The outstanding thought of the whole argument is the necessity of giving more protection to men and women who work for others and, indeed, it is in this sense that the words 'workmen' and 'laborers' are used. Those who submitted the affirmative argument are the ones who circulated the petitions necessary for the submission of the act to the electorate, and presumably they are the ones who caused the act to be drawn; and they made it plain that their understanding was that the design of the bill was to protect employees, for it is stated in the argument:

> " 'This bill does not ask so arbitrary and artificial a thing as that the laborers' wages be protected and guaranteed by law, *but it does ask that the employer be compelled to use diligence in protecting the laborer as to his life and limb, while earning wages; that a safe place in which to work be provided* and that ropes, chains, beams, machinery, etc., be properly tested *before the workman is asked to risk his life* with them. (Italics ours.)'

> "If the voter read the affirmative argument before he read the bill, it is difficult to understand how he could have entered upon reading the bill with any expectation other than that of

reading a bill to protect employees. It is true that the ballot title declares that the bill is 'for a law requiring protection for persons engaged in hazardous employments,' but it is also true that it does not say 'all persons'; and, moreover, the ballot title does declare that the bill is for a law 'defining and extending the liability of employers' thus implying that the persons to be protected are employees." *Id.* at 436.

When looking at the use of "public" and "general public" in the ELA, the court said:

"* * * The word 'public' appearing as it does in Section 1 was inserted for the purpose of marking out the extent to which an owner must go for the protection of employees. The purpose was not to give a mere member of the public a right of action. The purpose was to give protection to persons working for others * * *." *Id.* at 439.

The court's decision was summed up as follows:

"The whole history of the preparation, submission and adoption of the act and the language employed in the title and in the body of the statute make it plain that it is designed to protect employees, and to give them, or their substitutes, and only to them the right to prosecute under it an action for damages whenever injury or death results from a violation of it." *Id.* at 440.

This holding was followed in *Helzer v. Wax,* 127 Or 427, 272 P 556 (1928). In *Helzer,* the plaintiff was an independent contractor with whom the defendant had contracted to haul away garbage on a weekly basis. The plaintiff fell down an unguarded elevator shaft and sought recovery under the ELA. The court held that "[s]ince the plaintiff was not an employee, but was an independent contractor, we conclude that he could not maintain this action as a beneficiary under the act." *Id.* at 438.

The statutes in question have remained essentially unchanged from the time of enactment by the people to the present. In 1953, at the time Oregon's compiled laws were revised, the revisers split section 1 of the ELA into two parts. The first part became ORS 654.310 and the second part, commonly known as the "and generally" clause, became ORS 654.305. We find no indication that the legislature intended any change in the meaning given to the ELA at that time.

In 1975, the legislature amended ORS 654.310. The

legislature deleted the laundry list of special areas of employment and conditions covered and replaced it with a general requirement that all places of employment shall be in compliance with the rules and regulations of the Workers' Compensation Department. Again, we can find no legislative intent to change the meaning and application of the ELA.[3]

We conclude that the meaning and application of the ELA has not been changed by the legislature. As the court noted in *Helzer*: "[o]ur past decisions in expounding the meaning of the act make repeated use of the words employer and employee, and recovery has been uniformly confined to the latter." 127 Or at 437. This still holds true today. *See, e.g., Sacher v. Bohemia, Inc., supra.*

However intriguing may be plaintiffs' attempts to widely separate ORS 654.305 from ORS 654.310, so as to disengage the employee relationship or status requirement identified in the former statute, previous caselaw of this court precludes, and legislative history does not support, that contention.[4]

Therefore, the answer to the federal district court's question is that to recover under the provisions of the ELA, the injured worker must be an employee of someone. Because an independent contractor is not an employee of anyone, he cannot recover under the ELA.

**LENT, J.,** concurring.

I believe that the early cases, *Saylor v. Enterprise Electric Co.,* 106 Or 421, 212 P 477 (1923), and *Turnidge v. Thompson,* 89 Or 637, 175 P 281 (1918), do hold, as the majority says, that in order for the Employers' Liability Act to be applicable the plaintiff must be the employee of someone or claiming by reason of an employee's injury or death. I believe, however, that those cases were wrongly decided. The text of

---

[3] *See* Minutes, Senate Committee on Labor, February 17, 1975.

[4] Plaintiffs argue that it would be ludicrous to have an artificial distinction based on whether the decedent was an independent contractor or whether he had incorporated and was himself the sole employee of the corporation. This result may be ludicrous, but the clear intention of the legislature, as long interpreted by this court from the time of adoption of the ELA to the present, requires this outcome and will control until the legislature changes it.

the statute has never been limited to recovery by employees only.

There was no reason for this court in those early cases to resort to arguments in the Voters' Pamphlet to understand the clear meaning of the text of the new statute. This court should have applied the statute according to its clear meaning as expressed in the words chosen by the proponents to become a part of the law of the state. If that meaning were not satisfactory to the people or their elected representatives in the legislative department of state government, the statute could have been amended. For whatever reason, however, this court arrogated unto itself amendment of the new statute in the guise of interpretation.

Unfortunately, I feel bound to respect that interpretation because of the rule of *stare decisis. State v. White,* 303 Or 333, 348, 736 P2d 552 (1987). For that reason only, I concur.